(No. 15468.—Reversed and remanded.)
Martha M. Smith *et al.* Appellants, *vs.* E. A. Dugger, Appellee.

*Opinion filed December 19, 1923—Rehearing denied Feb. 16, 1924.*

1. Specific performance—*complainant must show title which is not doubtful.* On a bill for specific performance by a vendor who has agreed to convey land in fee simple, clear of incumbrances, by good warranty deed, the complainant must show that the title he offers to convey is not doubtful and is not one which will expose the purchaser to litigation with parties not before the court and who will therefore not be bound by its decree.

2. Same—*when specific performance will be decreed as matter of right.* Where a contract for a conveyance of land is fairly and understandingly made and the vendor has a clear title to convey, specific performance will be decreed as a matter of right.

3. Deeds—*when title of grantees becomes indefeasible on death of grantor—specific performance.* Where a grantor makes a conveyance by warranty deed to his three sons, with a provision that in case of the death of either of the grantees "before marriage and legitimate heirs" the property shall vest in the surviving grantees and reserves a life estate in himself, the estate of the grantees vests in interest but does not vest in possession until the death of the grantor, at which time it becomes indefeasible in the grantees, and a title obtained from them is sufficiently free from doubt that its conveyance may be enforced by specific performance. (*Harder v. Matthews,* 309 Ill. 548, followed.)

Thompson, J., dissenting.

Appeal from the Circuit Court of Macoupin county; the Hon. Frank W. Burton, Judge, presiding.

Harry DeFrates, and Jesse Peebles, for appellants.

Murphy & Hemphill, for appellee.

Mr. Chief Justice Farmer delivered the opinion of the court:

December 27, 1919, by a written contract duly executed, appellants agreed to "convey and assure to the party of the second part in fee simple, clear of all incumbrance whatever,

by a good and sufficient warranty deed and an abstract to date," a farm of 162 acres in Macoupin county, and appellee agreed to pay for the same $35,640 on or before March 1, 1920, at which time possession was to be given. Appellee, claiming that the title was defective, refused to carry out the agreement, and appellants filed their bill seeking specific performance of the contract. A decree was entered dismissing the bill for want of equity, and this appeal followed.

This being a bill by the vendor for specific performance of a contract for the sale and conveyance of land, to entitle him to a decree he must show that the title which he offers to convey is not a doubtful title and is not one which will expose the vendee to litigation with parties not now before the court and therefore not bound by its decision. Where there is reasonable doubt as to the validity of the title the court will not specifically enforce a contract of this character. *Weberpals* v. *Jenny,* 300 Ill. 145; *Close* v. *Stuyvesant,* 132 id. 607.

The abstract furnished disclosed that the title to 70 acres of the land involved was in 1873 in Joseph Crum, and that in that year he conveyed it by warranty deed to Frederick, Charles and Isaac Crum, the consideration being $3600. The deed contained this provision: "Now, in case of the death of either of the above vendees before marriage and legitimate heirs, then and in that case the above described lands shall vest in the vendee or vendees that are living and in no other person or persons whomsoever; and further, the above named vendees being my legitimate heirs, I reserve the exclusive control and right to use in any way for my benefit the above described lands during my natural lifetime." The grantees named, by their several warranty deeds have conveyed their interest in the 70 acres involved to appellants' predecessor in title. An affidavit of Fred O. and C. O. Crum attached to the abstract of title shows that Joseph Crum died in 1888; that Frederick and Charles are

310—40

children of Joseph; that Frederick is now sixty-two years of age and has never been married; that Charles is now sixty-two years of age, is married and has six living children; that Isaac, the third grantee named in the deed of 1873, was married twice,—the first time in 1888 and the second time in 1894; that two children of the first marriage and four children of the second marriage are now living; that Isaac died in 1918.

The deed conveyed to the three sons of the grantor a fee determinable upon their dying before marriage and having children born, in which event the interest of the one dying should go to the survivor and to no other person. Appellee does not question the validity of appellants' title to the interest of Charles and Isaac Crum, but his contention is that if Frederick should die after the death of Charles without having married and had issue born, the heirs of the grantor, Joseph Crum, would have an interest in the share of Frederick. The decision of this case we think depends on whether the death of the grantees without marriage and legitimate children referred to in the deed meant death before the grantor died or death at any time. If the deed had been a direct conveyance to the grantees, and if any of them died without marriage and birth of a child then to go to the survivors, the reference as to death would mean death at any time, before or after the death of the grantor. (*Fifer* v. *Allen,* 228 Ill. 507; *Ahlfield* v. *Curtis,* 229 id. 139.) In this case the remainder conveyed to the grantor's three sons vested in interest but not in possession, for it was preceded by a life estate in the grantor and falls within the rule announced in *Lachenmyer* v. *Gehlbach,* 266 Ill. 11 : "If a particular estate precedes a gift over, the latter will usually take effect if the contingency happens at any time during the period of the particular estate. In such a case, death without issue means death before the death of the life tenant, unless the will shows that the testator intended to refer to a later date

than the termination of the life estate." That rule has been approved in numerous subsequent decisions. On this question this case cannot be distinguished from *Harder* v. *Matthews*, 309 Ill. 548, where the rule above quoted was discussed and all the cases referred to in which that rule was involved. The *Harder case* was a conveyance by deed reserving a life estate to the grantor of a fee to the grantee, with limitation over that if she died without leaving a child or descendant of a child the land was to go to the grantor's living grandchildren. It was held in that case, which is in harmony with previous decisions cited, that death of the grantee meant death during the continuance of the life estate reserved to the grantor, and the grantee having survived the grantor her title became indefeasible. There is no language in the deed to take this case out of the rule of construction sustained in the *Harder case* and the cases cited in the opinion, and it was held in that case the rule applies to a conveyance by deed the same as to a devise by will. Frederick Crum and his two brothers having survived the grantor, their title in fee became indefeasible at his death, and it follows that appellants have good title to the 70 acres in question.

Where a contract for the conveyance of land is fairly and understandingly made, specific performance will be decreed as a matter of right. (*Riemenschneider* v. *Tortoriello*, 287 Ill. 482; *Woodrow* v. *Quaid*, 292 id. 27.) The only objection raised by appellee to the specific performance of the contract is, that, to say the least, the title of appellants' acquired under the deed of Frederick Crum is doubtful. As we have held in repeated decisions on precisely similar questions, Frederick's title became indefeasible on the death of his grantor. The title he conveyed is good and free from doubt.

There was a mortgage on the land, and it is said the vendor was unable to make a clear title. This is barely referred to in the briefs and the testimony preserved in

the abstract. The proof shows, without question, appellant tendered appellee a release of the mortgage executed by the mortgagee. What little proof there is on that question warrants the conclusion that appellee knew all about the mortgage, that he was to borrow as much money on the land as he could, and what he lacked of borrowing enough to pay the purchase price appellant agreed to accept appellee's note. It was not material to appellee whether the mortgage had been paid off or not, if he had the mortgagee's release. It is apparent appellee did not refuse to perform the contract on account of the mortgage. His objection to the title was based on the question above discussed and which is the only question argued in the briefs.

The decree is reversed and the cause remanded, with directions to grant the relief prayed in the bill.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting:

In construing any written instrument, words ought to be given their ordinary meaning and the intention of the parties ought to be gathered from the language used by them. By the deed of 1873 the grantor conveys the fee to the grantees and then provides for the shifting of the fee upon the happening of a certain contingency. This leaves the fee of the several grantees base or determinable. As the fee is to shift "in case of the death of either of the above vendees before marriage and legitimate heirs," the question is, To what time does death refer? Death in the lifetime of the grantor or death at any time? "Before" is a word denoting time, and means "prior to" or "preceding." *Prima facie,* the language used by the grantor means death at any time. The grantor has definitely fixed the event on the happening of which the fee shall shift. The rule declared by this court for the first time in *Lachenmyer* v. *Gehlbach, supra,* which says that if a particular estate precedes a gift over, the latter will usually take effect if the contingency

happens at any time during the period of the particular estate, and that in such a case "death without issue" means death before the death of the life tenant, unless the will shows the testator intended to refer to a later date than the termination of the life estate, is, of course, a rule of construction, and will not be applied where the language of the instrument being construed indicates that the maker of the instrument referred to death at any time, either before or after his own death. (*Fulwiler* v. *McClun,* 285 Ill. 174; *Gavvin* v. *Carroll,* 276 id. 478.) The object to be attained in construing an instrument is to give it the interpretation and meaning which the maker intended, and his intention will be carried out whenever it can be done without violating some established rule of law or public policy. All artificial rules of construction yield to the intention of the maker plainly expressed. (*Fifer* v. *Allen, supra.*) Notwithstanding the fact that a life estate precedes the gift over, the language here used by the grantor clearly indicates that he referred to a death before marriage, whether that death occurred before or after his own death. My views on this subject are set forth fully in a dissenting opinion in *Harder* v. *Matthews, supra.*

The language used in the deed is unusually confusing. The deed provides that all the lands shall vest in the surviving vendee or vendees where there is a death of one or more before marriage and legitimate heirs, ("heirs" must be construed to mean "children,") but it makes no provision for the contingency which may happen in this case. One of the grantees is dead, but he left surviving him a widow and six children. If Frederick should die before he is married, will all of the lands pass to Charles, the surviving vendee, or will Frederick's share only pass to Charles, or will his share pass to Charles and the heirs of Isaac? The grantor declares in his deed that the grantees are his legitimate heirs but does not declare that they are his only heirs, nor is there any evidence in the record to show that he did

not leave surviving him other heirs who may make claim to a part or all of this land in the event Frederick remains unmarried and is the last survivor of the three grantees.

Appellants' title may not be disturbed, but it is clear to me that it is a doubtful one and may subject the owner to expensive litigation in its defense. Under these circumstances I am of the opinion the chancellor properly denied specific performance.