(No. 19288.—

MAX SEGLIN *et al.* Appellants, *vs.* HARRY LEMEIN *et al.* Appellees.

*Opinion filed April 20, 1929.*

Max J. Kaplan, for appellants.

Albert G. Miller, for appellees.

Mr. Justice Farmer delivered the opinion of the court:

Max Seglin and his wife, Martha Seglin, (hereafter referred to as appellants,) filed their bill during March, 1927, in the superior court of Cook county, seeking the specific performance of a written agreement entered into on June 10, 1926, by and between them and appellees, Harry and Gertrude Lemein, husband and wife, whereby the latter agreed to sell and appellants agreed to buy certain improved real estate located on West Division street, in the city of Chicago. The bill set forth the substance of the agreement, and alleged, among other things, that appellants have always been, and are, ready and willing to fully perform their part of the agreement but that appellees have at all times refused to carry out their part of the contract. A copy of the agreement was attached to and made a part of the bill. An answer under oath was filed by appellees admitting ownership of the West Division street property and the making of the contract, but denying that appellants had been ready and willing to comply, or had complied, with the terms of the agreement. The answer averred, among other things, that appellees had refused to execute and deliver a deed for the West Division street property because appellants could not deliver certain notes secured by a junior mortgage upon

other property known as 5044 North Clark street, Chicago, which was a part of the consideration to be paid in the sale, until the return from Europe of certain persons on or about December 1, 1926; that because appellants did not deliver the notes and mortgage on the North Clark street property, together with a guaranty policy showing the same to be a second mortgage thereon and that appellants had good title to the property, appellees had on September 1, 1926, after notice to appellants, forfeited the contract and declared the same null and void. The cause was referred to a master in chancery to take the proof and report his conclusions. The master made his report, finding the equities in favor of appellants and recommending that a decree be entered for specific performance of the agreement. Objections filed by appellees to the report of the master were overruled and were ordered to stand as exceptions. The chancellor sustained the exceptions and a decree was entered dismissing appellants' bill for want of equity. From that decree appellants have prosecuted an appeal to this court.

It is the contention of appellants that the agreement was fairly entered into between the parties; that it is sufficiently definite and certain to be enforced; that the findings of the master are supported by the evidence, and that the chancellor erred in entering the decree.

The agreement executed by the parties on June 10, 1926, as it appears in the abstract, is as follows:

"This memorandum witnesseth, That Max Seglin and Martha Seglin hereby agree to purchase at the price of seventeen thousand ($17,000) dollars, the following described real estate, situated in the county of Cook and State of Illinois: Lot eleven (11) in Givins Gilbert and Wallace's subdivision of north 5 acres of north ten acres of E. ½ of N. W. ¼ of S. E. ¼ of section three, township thirty-nine north, range thirteen, east of the third principal meridian improved by two-story brick bldg. also known as 4225 W. Division street.

"Harry Lemein and Gertrude Lemein his wife, as husband and wife, and as joint tenants and not as tenants in common agree to

sell said premises at said price, and to convey to said purchaser a good and merchantable title thereto, by general warranty deed, with release of dower and homestead rights, but subject to (1) existing leases, on 2d flat at $70 a month for one year from July 1, 1926, the purchaser to be entitled to the rents from date of delivery of deed; taxes for 1926 shall be prorated to date of delivery of deed; (2) all taxes and assessments levied after the year 1926; to building line restrictions and building restrictions of record, and to a trust deed securing a note for $10,000, due January 1, 1931. Premiums on insurance policies held by mortgagees shall be paid for by said first party *pro rata* for the unexpired time. Said purchaser has paid one hundred ($100) dollars, as earnest money, to be applied on such purchase when consummated, and agrees to pay within five days after the title has been examined and found good, or accepted by him, said insurance premium and the further sum of six thousand nine hundred in the manner stated hereafter (..........) dollars, at the office of ........... Chicago, provided a good and sufficient general warranty deed, conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid), shall then be ready for delivery. The balance to be paid as follows: Notes secured by a junior trust deed on lot 5 in sub of lots 2 and 3 in block 3 in Andersonville a subd. of N. E. ¼ of S. E. ¼ of section 7 and part N. W. ¼ of S. W. ¼ sec. 8, township forty north, range 14, also known as 5044 No. Clark street.

"Said mortgage will be delivered to evidence the payment of $6900. Said notes to be for the amount of $50 each payable on or before the first day of the month beginning August 1, 1926, with interest at the rate of 6% per annum. Interest to be computed from August 1, 1926.

"The lien of this trust deed shall remain subordinate junior and inferior at all times to the liens of certain trust deeds now of record and shall further remain subordinate junior and inferior to and subject to any renewal or extensions thereof, and to any new trust deeds which may be given for the purposes of making new mortgages."

The agreement further provided that appellees were to furnish a certificate of title to their property, issued by the registrar of titles of Cook county, or a complete merchantable abstract of title, or merchantable copy brought down to date of the contract, or merchantable title guaranty policy made by the Chicago Title and Trust Company, and deliver the same to the purchasers or their attorney within

ten days. It also contained the usual provisions concerning the finding and curing of defects of title, if any.

There is a sharp conflict in the evidence as to conversations had between the parties after the execution of the agreement. It appears that appellants, who were and had been living at 5044 North Clark street, in Chicago, went to appellees' house on the evening of June 10, 1926, accompanied by their son, and there drew and signed the agreement in question. It was drawn by appellants' son, who had recently been admitted to the bar. Apparently the respective parties had previously examined the properties involved in the transaction. The testimony offered by appellants' witnesses was to the effect that several conversations were had with Harry Lemein, one of the appellees, about closing the deal; that a guaranty policy on appellants' Clark street property, issued by the Chicago Title and Trust Company in January, 1919, was given to Lemein at the latter's request; that Lemein told Max Seglin, one of the appellants, to make one note for $6900 instead of a lot of notes in connection with the trust deed on appellants' Clark street property, which was to be given to appellees as part payment in the sale of their Division street property; that appellants' son made a note dated June 28, 1926, for $6900, payable $50 per month, beginning August 1, 1926, and for 137 months thereafter, with six per cent interest per annum, and also a trust deed upon appellants' property to secure the same, both of which instruments appellants signed; that on or about June 30, 1926, appellants and their daughter went to appellees' home and tendered to the latter the note and a trust deed upon the North Clark street property, stating they were ready to make the deal, but appellees refused to comply with the agreement. The proof of appellants also shows that appellants saw appellees many times after June 30, 1926, and were always ready and willing to complete the transaction and offered to deliver to appellees the note and trust deed on their Clark street property, but

appellees refused to do anything; that Mrs. Lemein was at home some of the times when appellants were at her house, and one time she chased one of the appellants out of her house; that Mrs. Lemein stated to appellants' son that the reason appellees would not complete the deal was, they wanted $75 a month payment and $500 more for the property; that appellees knew there were two mortgages or trust deeds against appellants' North Clark street property when the contract was made, though the second mortgage had no notes outstanding against it; that no opinion or abstract concerning the title and no deed to appellees' property on West Division street had ever been shown or given to appellants or their attorney.

The evidence of appellees admitted that the deal had not been closed and that no letter of opinion or abstract of title had been delivered to appellants but that a guaranty policy had been issued by the Chicago Title and Trust Company. Only one of the appellees, H. Lemein, testified, and he stated that appellants came to see him many times; that they said they could not close the deal till a claim against their Clark street property in amount of $500 was paid, and the man who had the claim was then in Europe; that they did not deliver a guaranty policy down to date on their Clark street property; that they were told that the title to appellees' property was clear and the opinion was downtown at the office of appellees' attorney. Lemein further testified that his banker objected to the contract after it was signed; that he said it was a bad contract and did not want appellees to go through with the deal; that Lemein first employed an attorney about the first of July; that he built a frame garage on the property during November, 1926; that he would be ready and willing to close the property deal by taking a second mortgage on appellants' property and not a junior mortgage, but he was not willing to go through with the old contract because it was a fraud. Appellees' attorney testified that he had received from a certain bank

a guaranty policy on appellants' North Clark street property which was brought down to 1919, and also an opinion dated June 25, 1926, by the Chicago Title and Trust Company, on appellees' West Division street property; that one of appellants' attorneys refused to have the guaranty policy on appellants' property brought down to date but said Lemein would get a second mortgage. The attorney further testified that he did not ask appellants for a later date on the guaranty policy upon their Clark street property, and he did not deliver any letter of opinion or copy of it to appellants' lawyer.

The record shows that on August 27, 1926, appellees wrote a letter, designated as a declaration of forfeiture, which they mailed to appellants. It referred to the signed contract of sale and described appellees' property. The letter stated that appellants had "agreed to deliver a certain mortgage on the premises known as 5044 North Clark street, and a guaranty policy on said last mentioned premises showing clear title and that said mortgage was a second lien on said premises; and whereas you have failed to this date to deliver any guaranty policy showing the condition of title, excepting one continued to January 20, 1919, and whereas more than sixty days have elapsed since you entered into said contract, you are hereby advised that the undersigned will be ready with a deed to be delivered to you for said premises at the Pioneer Trust and Savings Bank on Wednesday, September 1, 1926, at the hour of twelve o'clock, provided, however, that an opinion by the Chicago Title and Trust Company is delivered showing the premises as agreed to by you in said contract, and your failure to comply with this notice and the demand herein, I will forfeit and declare null and void said contract, and your rights to the same and thereunder will be terminated." This declaration was later filed for record by appellees. It was stipulated on the hearing before the master that ap-

pellants did not receive this letter until September 2, 1926. On the day of its receipt appellants wrote a letter to appellees, which the latter acknowledged having received about the date it was written. That letter called to the attention of appellees that appellants had frequently tendered a trust deed and notes on their North Clark street property in accordance with the written agreement between the parties; that appellees had at all times refused to accept the same, had refused to comply with their part of the agreement, and had refused to deliver an opinion of title on their West Division street property. The letter stated appellants were still ready and willing to complete the contract in accordance with its provisions. The record also shows that a further tender of a note and a trust deed upon appellants' Clark street property was made to appellees at the time of the hearing before the master, and the tender was refused because the contract had been forfeited by appellees on September 1, 1926, and because appellants had not shown the condition of title of the property described in the trust deed tendered.

It is the contention of counsel for appellees that the written agreement does not state who is to execute the note and trust deed on the North Clark street property and the agreement is too indefinite to be enforced. The proof establishes that appellants were living in the North Clark street property when the deal was made and that appellees were familiar with that property. In addition thereto, at the hearing before the master appellees' counsel stipulated into the record that when the contract was executed there were two trust deeds of record against the North Clark street property, which belonged to appellants. The amount of the mortgage, the time of payments, its maturity and the rate of interest were not uncertain or indefinite, and we think the record discloses that appellees fully understood the transaction.

Appellees further contend that no muniment of title to the North Clark street property, which the record shows was owned and occupied by appellants, was furnished to appellees. The evidence shows that a guaranty policy upon appellants' property dated in January, 1919, reached the possession of appellees' attorney. He admits he did not ask appellants for a later dated guaranty policy, and his conversation with appellants' attorney about the question of a second mortgage on the Clark street property is in dispute. The contract itself does not require, or even intimate, that appellants were to furnish appellees with either an abstract of title or guaranty policy upon their North Clark street property.

The alleged declaration of forfeiture executed on August 27, 1926, by appellees was not received by appellants until the day after the date specified therein that appellees would be present at the Pioneer Bank ready to deliver a deed to the premises sold. The evidence of appellees neither shows that they were ready and willing to deliver a deed at the time specified nor that the agreement was forfeited and declared null and void. We agree with the master that the alleged forfeiture declaration was of no legal consequence.

The written contract was that appellants would deliver to appellees $6900 in notes of $50 each, payable, respectively, on the first of each month, beginning August 1, 1926, with interest at six per cent. The tender made by appellants was of one note for $6900, payable in installments of $50 per month, with interest at six per cent. It is objected the note tendered by appellants was not as required by the written contract. The change of the form of the note was made at the suggestion and request of appellee Harry Lemein and did not avoid the contract.

The agreement shows the balance to be paid by appellants to appellees was to be represented by a note secured

by a junior trust deed on the North Clark street property, owned by appellants. However, the evidence produced tends to show that all parties concerned had in mind and intended that such balance of indebtedness was to be legally preceded only by a first mortgage or trust deed on the premises. Though a second trust deed or mortgage existed when the contract was made, appellees apparently were aware of this, and also knew that there were no notes outstanding against it or for which it was given as security. As we understand the record, when the last tender was made by appellants the first trust deed was the only prior indebtedness then existing against appellants' Clark street property.

An analysis of the record necessarily results in the conclusion that appellees were not disposed to complete the contract, which, so far as we are able to determine, was fairly entered into by the parties. The evidence is conclusive that appellees never tendered to appellants either an abstract of title, guaranty policy or deed for their West Division street property, which was the subject of the sale, as provided for in the contract. Where a valid contract exists for the sale of land, a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression or fraud appear. *Miedema* v. *Wormhoudt,* 288 Ill. 537.

The decree of the superior court will therefore be reversed and the cause remanded, with directions to enter a decree requiring the specific performance of the contract and granting the relief prayed in the bill.

*Reversed and remanded, with directions.*