(No. 19910.

GEORGE F. VORIS, Appellee, *vs.* JOHN McIVER *et al.*
Appellants.

*Opinion filed April 17, 1930.*

WOLF & LOVE, (ALEXANDER WOLF, of counsel,) for appellants.

FLYNN & LYON, and JOHN T. FITZGERALD, (GEORGE W. LYON, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

George F. Voris filed in the superior court of Cook county an amended bill for the specific performance of a contract whereby John McIver and Elizabeth K. McIver, his wife, agreed to sell and convey to complainant a certain parcel of real estate in the city of Chicago. The vendors had purchased the land under a contract from Frederick H. Bartlett as trustee for the Frederick H. Bartlett Realty Company, not incorporated, but the deed, pursuant to that contract, had not been delivered to them. McIver and his wife, Bartlett, the trustee, and the persons composing the realty company were made defendants to the amended bill, and filed answers to it. The cause was referred to a master in chancery. Before that officer had concluded the taking of testimony, McIver and his wife completed the payments owing under their contract with the trustee, and became entitled to a conveyance of the land. The master, by his report, recommended a decree for the specific performance of the contract with the complainant. Objections and exceptions to the master's report were overruled and

a decree was rendered by which Bartlett, the trustee, was directed to convey the land in question, in accordance with his contract, to McIver and his wife, and the latter were directed not only to record the deed from the trustee, but also to convey the same land to the complainant, pursuant to the contract between them. From that decree John McIver and Elizabeth K. McIver prosecute this appeal.

On June 15, 1923, Frederick H. Bartlett, as trustee for the Frederick H. Bartlett Realty Company, sold to John McIver and Elizabeth K. McIver, his wife, and agreed to convey to them, upon payment of $9450, ten acres of land abutting Seventy-ninth street, between Nashville and Narragansett streets, in the city of Chicago. The purchase price was made payable as follows: $1500 in cash; $100 per month for forty-five months, and the balance at the expiration of that period, with interest on the portion remaining from time to time unpaid at six per cent per annum beginning one year after the date of the contract. On December 9, 1925, William C. Casey, a salesman employed by Schuberth & Sheridan, real estate brokers, negotiated a written contract, dated that day, by which McIver and his wife agreed to convey the land to Voris, the appellee, for $15,000. Of this sum Voris deposited $500 as earnest money; and he undertook, upon the consummation of the purchase, to pay $7000 additional in money and to execute his note for the balance, due in five years, with interest at six per cent per annum, payable semi-annually, the payment of the note to be secured by a trust deed on the land conveyed.

The allegations of the amended bill were supported by the testimony of three witnesses, William C. Casey, Voris, the appellee, and Henry F. Schuberth. Casey testified that he drew the contract in question on December 9, 1925; that he read it to McIver and his wife until he reached the third paragraph of the printed matter when McIver said it was unnecessary to proceed because he was familiar with the particular form of contract; that Voris, McIver and Mrs.

McIver then signed it and Voris drew a check for $500, the earnest money, which was deposited with Schuberth & Sheridan, the agents, as provided by the contract; that later, about the third week in December, the witness inquired of Mrs. McIver over the telephone when she would be ready to proceed, but she objected to the commission and said she did not think she would consummate the sale; that the witness was present in McIver's home on January 16, 1926, with Schuberth, Voris and John Galvin; that Voris placed $7500 in paper money on the table and while the witness did not pay particular attention to the denominations, he thought there were seven one-thousand dollar bills and one five-hundred dollar bill; that Mrs. McIver again inquired about the commission, stating that she was not obliged and did not intend to pay the agents five per cent of the purchase price or $750; that Schuberth sought to explain why the vendors should pay the commission, but after further discussion with Mrs. McIver, he consented to waive it; that the witness refused to forego his share of the commission, whereupon Schuberth assured him that he, Schuberth, personally would compensate him for his services, and that, the question of the commission having been settled satisfactorily, it was arranged that Voris and the agents should meet McIver and his wife at Bartlett's office early the next week to consummate the purchase.

Voris, the appellee, testified that, on January 16, 1926, he called upon McIver at his home, accompanied by Casey, Schuberth and John Galvin; that he placed money upon the table, and addressing McIver, said: "I have brought down the money, $7500. You can count it if you want to. Here is the deed and here are the notes and the interest coupons all made out according to the contract, and I want you to give me a deed;" that McIver answered he would deliver the deed, but that Voris should meet him and his wife at Bartlett's office on the following Wednesday, January 20, for that purpose; that, at the time, Mrs. McIver

objected to paying a broker's commission and her husband remarked that the provision concerning it had been inserted in the contract after it was signed; that Schuberth denied that any such change or alteration had been made, and that, although the contract required the vendors to furnish the purchaser with an abstract or other evidence of title, they had never complied with this provision.

From the testimony of Schuberth it appears that he first met McIver and his wife at their home on January 16, 1926, when Voris said he was ready to consummate the purchase; that there was a dispute concerning the broker's commission and Schuberth finally waived it; that Voris said he was ready to make a tender and offered McIver $7500 in paper money; that when the packages were opened, Voris counted the money and the witness saw bills of the denominations of $20 and $50; that a trust deed, notes and a warranty deed were also exhibited, and that McIver said that he and his wife would meet Voris and the agents at Bartlett's office on the following Wednesday to close the transaction.

The appellants were the sole witnesses for the defense. Elizabeth K. McIver testified that prior to the execution of the contract, Casey called at her house and inquired whether the property in question was for sale; that she informed him she had no desire to sell it; that he called again accompanied by Voris and both assured her she would make "some real money" if she permitted them to sell her acres; that they also inquired whether, if they sold the land and made her some money, she would pay a commission, and she answered again that she had no desire to sell the land; that they then presented a contract to her and she signed the instrument without reading it, and that Casey told her the contract would be returned to her at any time she requested it. Mrs. McIver further testified that later Schuberth called her on the telephone and made an appointment for Voris and himself to meet her the next day; that at the

time appointed they appeared at her home with two other men and Schuberth said Voris wanted the acres; that she answered he could not have them; that thereupon Voris placed some packages upon the table, but he did not make known to her nor could she see what was in them; that he did not offer her any money at any time; that upon his departure Voris said it was not his wish to harm anybody, but he did want the acres; that he invited her to go to Bartlett's office, but she declined the invitation; that she asked Casey to return the instrument she had signed, but he told her he did not have it in his possession; and that she had no deed to the property because she still owed a portion of the purchase price to Bartlett, the trustee.

John McIver testified that he was in charge of a twenty-five apartment building which he and his wife owned and in which they resided; that he met Casey prior to December 9, 1925, when the latter claimed some relationship to him; that he met Voris twice, once with Casey on December 9, and again on January 16, 1926, with Casey and two other men; that on December 9, while giving some attention to the boilers in the basement of his building, his wife requested him to sign a contract in order to get rid of Voris and Casey; that he signed the contract, but that Casey did not read it to him, nor was a check written or exhibited at the time; that on the occasion of the visit of the four men, Voris had some packages which, he said, contained $7500 but the packages were not opened; that Voris did not say he wanted a deed, and neither Voris nor Schuberth exhibited a deed, trust deed or notes; that he, the witness, did not, on that occasion, say that the provision about a commission had been inserted in the contract after it was signed, and that he did not tell Voris he would give him a deed, but he did request Voris to meet him at Bartlett's office on the following Wednesday.

To obtain a reversal of the decree, appellants assign nineteen errors upon the record and make various conten-

tions to support them. Their contentions, apart from those that are wholly inconsequential and need no notice, may be reduced to five. The first is that the contract was not fairly and understandingly entered into but was obtained by unconscionable methods. Substantially the only support for this charge is the testimony of McIver that Casey claimed to be a distant relative, and of Mrs. McIver that her health was poor; that she did not wish to sell the land and that she signed the contract for its sale because Casey and the appellee urged her to do so. Much of appellants' testimony, however, is inconsistent with the charge. They knew that the object of Casey's negotiations was a sale of their land for the questions of price and the commission to be paid the agents for effecting a sale were both discussed. After Mrs. McIver had signed the contract, she told her husband that they would make a substantial profit by the sale. This statement was in accordance with the fact because the appellants had purchased the land early in 1923 for $9450 and sold it two and one-half years later, as shown by the contract in question, for $15,000. Appellants owned and managed a twenty-five apartment building and necessarily were not wholly ignorant of matters of business. They were afforded the opportunity to read the contract in question but they did not avail themselves of it; and Casey testified that when he had read a portion of the contract, McIver told him it was not necessary to proceed because he was acquainted with the form used. Fraud is an affirmative defense and must be proved like any other fact. (*Woodrow* v. *Quaid*, 292 Ill. 27; *Union Nat. Bank* v. *State Nat. Bank*, 168 id. 256). No evidence was offered to show that the land was worth more than the price fixed in the contract. If a contract is fair and equitable when entered into, it can not become unfair and inequitable by circumstances which arise afterwards. (*Aldrich* v. *Aldrich*, 287 Ill. 213; *Dalby* v. *Maxfield*, 244 id. 214). The evidence justifies the conclusion that the appellants entered into the contract under-

standingly and that there was no resort to unconscionable methods to obtain its execution.

Another contention made by the appellants is that Casey acted for both parties without disclosing the fact to them. The object of Casey's first visit at appellants' home apparently was to obtain authority to list their land for sale. His failure to disclose the name of a prospective purchaser at that time is of no significance for he testified that he did not then know who might become the purchaser. Nor did his subsequent negotiations with Voris make him the latter's agent for a person does not necessarily become the agent of a purchaser simply because he brings the owner and the purchaser together to execute a binding contract. Casey's negotiations do not appear to have differed essentially from those usually conducted by real estate agents in transactions of a similar character; and after the contract had been fairly entered into, the fact that Schuberth and Casey accompanied Voris to make the tender did not make either of them the agent of the purchaser.

The appellants contend that they rescinded the contract and that the appellee assented thereto. The burden of establishing a rescission of the contract rested upon the appellants. (*Selman* v. *Geary,* 334 Ill. 642). The evidence shows that on January 16, 1926, the appellee tendered the appellants $7500 in money and notes secured by a trust deed for the balance of the purchase price, and that he demanded a deed conveying the land to him. While the witnesses differed concerning the denominations of the bills tendered, yet there can be no question that $7500 was laid upon appellants' table; that the appellee stood ready to perform the contract on his part and that he sought its performance by the appellants. A meeting in the office of Bartlett, the trustee, on a later day was appointed for the consummation of the sale, but the appellants not only refused to convey the land, but even to keep the appointment. The amended bill alleged and the appellee testified that he was

ready, able and willing to comply with the provisions of the contract. When he made the tender, he had done all that was required of him and it then became the duty of the appellants to perform the contract on their part. They can not take advantage of their wrongful refusal to proceed. Parties to a written contract may rescind it orally, but the evidence of rescission must be clear, positive and above suspicion. (*Selman* v. *Geary, supra; Evans* v. *Gerry,* 174 Ill. 595). Not only are these requisites wanting, but there is, in the present case, a complete lack of proof of the rescission of the contract by the parties or even of its abandonment by the appellee.

It is contended that the appellee was guilty of *laches* because he took no action between January 16, 1926, when he tendered performance of the contract, and May 23, 1927, when he filed his bill of complaint. The evidence shows no change of situation in the meantime which makes it inequitable to require the appellants to perform the contract. It is only when the delay is attended by circumstances rendering it inequitable to grant relief that *laches* may be successfully invoked. (*Grant* v. *Springer,* 330 Ill. 280; *Cohen* v. *Segal,* 253 id. 34). The appellee, by his tender, sought to perform the contract on his part, while the appellants failed to furnish any evidence of title to the land and refused to execute a deed conveying it. Nor does the provision that time was the essence of the contract avail the appellants. Where successive acts are specified and one party has performed what is required of him, the defaulting party cannot successfully claim the benefit of such a provision. *Cohen* v. *Segal, supra; Neidhardt* v. *Frank,* 325 Ill. 596; *Fleming* v. *O'Donohue,* 306 id. 595.

The contract, appellants contend, lacks mutuality. They fail to show wherein the contract was not equally enforceable by both parties. The appellants owned the equitable interest in the land; they were entitled to a conveyance of the legal title by the trustee, and a court of equity, having

before it the persons owning the beneficial interest and holding the legal title, had jurisdiction, at the suit of the purchaser, to decree specific performance of a valid contract. *Waggoner* v. *Saether,* 267 Ill. 32; *Miedema* v. *Wormhoudt,* 288 id. 537.

The proper function of courts is to uphold contracts and enforce their performance as made or give damages for a failure or refusal to perform them. Where a contract for the conveyance of real estate is fairly entered into and understandingly made, and its provisions are clear and specific, each party is entitled to specific performance of the contract, not as a favor but as a matter of right. (*Seglin* v. *Lemein,* 334 Ill. 566; *Schmidt* v. *Barr,* 333 id. 494; *Dime Savings and Trust Co.* v. *Knapp,* 313 id. 377; *Allen* v. *Hayes,* 309 id. 374; *Riemenschneider* v. *Tortoriello,* 287 id. 482). The contract in this case is of that character and no reason is perceived why it should not be specifically enforced.

The decree of the superior court is affirmed.

*Decree affirmed.*