(No. 24522.—
GEORGE H. YOUNG *et al.* Appellees, *vs.* LOUISE KICH *et al.*
Appellants.

*Opinion filed June 15, 1938.*

GEORGE H. MEYER, for appellants.

NASH, AHERN, McDERMOTT, McNALLY & KILEY, and JOHN F. CASHEN, JR., (ROGER J. KILEY, and DANIEL J. LAMONT, of counsel,) for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

A decree of the superior court of Cook county ordering specific performance of a contract for the sale of one acre of land is here for review on direct appeal.

In January, 1923, George Young commenced negotiations with Peter Krick, a real estate agent, for the purchase of the corner acre of a seventy-acre farm belonging to Mrs. Louise Kich and located at the intersection of One Hundred Forty-seventh street and Western avenue, in Chicago. Young told the agent, and he in turn informed Mrs. Kich, that the land was to be purchased by the Sinclair Refining Company. Mrs. Kich agreed to sell the land for $2500 and the agent was directed by Young to draw up a contract of sale with Young's name as purchaser. Young stated to the agent that he represented the Sinclair Refining Company and that all contracts of this type were taken in his name. This was explained to Mrs. Kich by the agent when she objected to the failure of the contract to designate the Sinclair Refining Company as purchaser. When reassured by the representations of Young's agent of Young's authority, she signed the contract. By its terms, the Kichs agreed to furnish a merchantable title guaranty policy within a reasonable time, with balance of purchase price to be paid within five days after the title had been examined and found good. On returning to his office Krick called Young who came and signed the contract. The Kichs have never furnished Young an abstract of title nor a title guaranty policy. Some weeks later, the Kichs learned there was an alleged defect in their title arising out of a misdescription in the deed made by Mrs. Kich's parents to her in 1904.

Over a year later, on February 11, 1924, Young entered into a contract with Apaminondas Ketsios to sell him the land for $4000, and $1500 earnest money was paid. This contract was similar in terms to the Young-Kich contract except that the balance of the purchase price was to be paid at the rate of fifty dollars per month, with interest. Ketsios made his monthly payments for March, April and May to Young's attorney who declined to accept the June payment, saying there was some difficulty pertaining to the title and Young might not be able to secure a deed from the Kichs. Thereafter, Kich and his attorney, Meyer, Ketsios and his attorney, and the attorney for Young met at Meyer's office. Ketsios there stated to Meyer in Kich's presence that he had talked with Kich who told him he wanted to go through with the deal. Kich said nothing, but Meyer stated there was no chance of that since there was some outstanding interest in Mrs. Kich's brother, Charles J. Schwartz. Meyer further stated he thought the Sinclair Refining Company was the party primarily interested and to whom conveyance would have to be made and that he understood it was no longer interested. On this occasion both attorneys for Young and Ketsios said their clients were willing to take the title as it stood regardless of the supposed outstanding interest in Schwartz, but Meyer said they would not deliver title to Young in its then condition. On January 12, 1925, Ketsios brought a suit in assumpsit against Young for recovery under their contract, but this suit was later dismissed by stipulation prior to the filing of Young's suit against the Kichs. Subsequently Young and a Mr. Gates called, at Mrs. Kich's home, tendered her the balance due on the contract and demanded a deed. Mr. Kich was absent from home but Mrs. Kich said she could do nothing and referred them to Krick. Young then filed his bill for specific performance. Ketsios filed a cross-bill asking for specific performance of his contract with Young, and also of Young's contract with Mrs. Kich. The superior court entered a de-

cree ordering that both contracts be performed by the respective parties.

The principal reason assigned for setting aside the decree is that the Kichs executed the contract upon false representations of Young. However, the record is barren of any testimony indicating that prior to the filing of the suit by Young, the Kichs ever charged directly or indirectly that they had been induced to sign the contract through misrepresentations or had refused performance on that ground. They make no such charge in their answer. Instead, they alleged that when the contract was made, Young was the agent of the Sinclair Refining Company and entered into the contract as its agent, the company thereby becoming the vendee. The record shows that after Young purchased the acre in question he endeavored to interest the company in purchasing it from him; that the company took the matter under consideration, had the tract surveyed, but did not consummate the purchase on account of some discrepancies in the description and also because the boundaries did not meet the company's requirements. From 1923 to 1926, and thereafter until the suit was instituted by Young, however, no claim of false representations, sharp practice, trickery or overreaching on the part of Young was suggested, nor were any assertions made or intimated that the contract had not been fairly entered into for an adequate consideration, nor was any charge made that Young was not entitled to a conveyance. It is significant, also, that the Kichs did not repudiate the contract and never offered to return the earnest money paid them until they tendered it in court after the suit was brought. The only question raised by the Kichs or by their attorney, prior to the suit, was as to the supposed outstanding interest in the tract by Mrs. Kich's brother. The evidence shows that both Young and Ketsios offered to perform prior to the time this suit was started and stated they were willing to take the title as it was and accept a deed. Each testified before the master that the

title of Mrs. Kich was acceptable to them. The decree makes a specific finding in accordance with the report of the master that Schwartz does not have and has not had any interest or estate in the premises. It is obvious, therefore, that the refusal of Mrs. Kich to perform cannot properly be based on her lack of title. It must also be noted that, so far as appears in the record, the first intimation that appellants would not convey to Young was the statement made by their attorney, Meyer, at the meeting between the parties shortly before this suit was started. The ground then suggested was not that Young had secured the execution of the contract by false representations, but that the Sinclair Refining Company was the real party in interest. The rule is well settled that when one party to a contract bases his refusal to perform on one ground, he waives all other grounds and when suit is brought is estopped from setting up other grounds for his refusal. *Danberg* v. *Langman,* 318 Ill. 266; *Vincent* v. *McElvain,* 304 id. 160; *Miller* v. *Gordon,* 296 id. 346.

It is next urged that because Ketsios brought a suit in assumpsit against Young under their contract, Ketsios made an election of remedies and is now barred from specific performance. If Young were taking this position, it might have merit, but no authority has been been cited showing that the Kichs can urge that defense here, as Ketsios is seeking specific performance from Young, who has not asserted that ground of defense against Ketsios.

Finally, we do not believe that Young and Ketsios are barred by *laches.* It does not appear that either of them was lax in seeking performance prior to instituting suit or that their conduct at any time evidenced an intention to abandon their respective contracts. The record indicates that while Young might have made greater efforts to accelerate the proceedings, the delay was chargeable primarily to the Kichs. Further, there is no showing that the Kichs were prejudiced or injured by the delay. In the absence

of such showing the defense of *laches* fails. (*Forest Preserve District* v. *Emerson,* 341 Ill. 442.) The Kich contract was fair and equitable when entered into, with a down payment of $250 then made and accepted. Young never abandoned his rights under it. The principal reason assigned by the Kichs for not making conveyance was that there was an outstanding interest which affected their title. Both Young and Ketsios were willing to accept the title as then shown by the records. While every case of specific performance necessarily must depend in large degree upon its own special circumstances, (*Sugar* v. *Froehlich,* 229 Ill. 397,) yet where a written contract for the sale of real estate is entered into fairly and understandingly and its provisions are clear and specific, each party is entitled as a matter of right to specific performance of it. *Voris* v. *McIver,* 339 Ill. 340.

The decree is affirmed.                    *Decree affirmed.*