(No. 28115.—

HERMAN E. SMITH *et al.*, Appellants, *vs.* THE FARMERS' STATE BANK OF ALTO PASS *et al.*, Appellees.

*Opinion filed May 23, 1945.*

PAUL D. REESE, of Jonesboro, (FLETCHER LEWIS, of Murphysboro, of counsel,) for appellants.

FORD L. RENDLEMAN, of Anna, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

A decree of the circuit court of Union county, entered in an action for specific performance of a contract and for damages, is here for review.

The facts are as follows: February 11, 1943, appellee Farmers' State Bank executed an option to appellants to purchase the lands involved here within three months after the date thereof for the sum of $3500. The option recited

it was given to enable appellants to obtain a loan from the United States government for the purchase of that land. The bank agreed to convey by warranty deed a valid, unencumbered, indefeasible fee-simple title, meeting all requirements of the United States government; to deliver, without charge to appellants, a policy of mortgagee title insurance in favor of the government, issued by such company as the government should approve, in the amount of the purchase price of the property, and to comply with all requirements of such company, including the furnishing of an abstract of title and continuation thereof when required. It also agreed that all tax liens, encumbrances, or other interest in third persons, would be satisfied or discharged by the bank, including stamp taxes, and other expenses incidental to the preparation and execution of the deed and other evidences of title required by the government, and that, upon the failure of the bank to furnish such policy of insurance within a reasonable time, appellants could procure such insurance, in which event the cost thereof was to be deducted from the purchase price. The offer was made irrevocable for a period of three months from the date thereof, and was to remain in force thereafter until terminated by the bank by giving ten days' written notice to appellants of such termination.

The option was recorded in the office of the recorder of deeds of Union county. February 24, 1943, appellee bank and appellant Herman S. Smith entered into an agreement by which appellant Smith moved on the farm until it was decided as to whether Smith would be able to exercise his right to purchase under the option given him by the bank, within 90 days from February 15, 1943. This agreement further provided that in the event it was not possible for Smith to purchase the property within the time named, he, within ten days from the establishment of that fact, was to give up possession of the lands. Appellants entered into possession under that agreement, and on

May 3, 1943, accepted, in writing, the offer contained in the option on the terms therein set forth. Appellee bank acknowledged receipt of said acceptance.

Under the option, the title insurance policy was to be procured from a company or companies approved by the United States Farm Security Administration. On May 7, 1943, the Farm Security Administration notified the bank in writing that Lawyers' Title Insurance Corporation, Richmond, Virginia, with offices in St. Louis, Missouri, was approved for issuance of title insurance policies and that the Union County Abstract Company, Anna, Illinois, was an approved local abstracter and representative. Appellee bank obtained an abstract of title to the land from the named approved abstract company and made application to Lawyers' Title Insurance Corporation for a mortgagee loan guaranty policy. That company declined to issue the insurance guaranty policy unless a substantial part of the purchase price of the land was put in escrow, because the abstract revealed that the grantors in the deed to the bank owned but a life estate and a contingent remainder and did not have the fee-simple title. July 21, 1943, appellee bank, in consideration of $4000, by warranty deed conveyed the land to appellee Claude Messamore, and the latter, with his wife, executed a mortgage for $2500 to appellee A. D. Landreth, president of the bank. Later, actions in forcible entry and detainer and distress for rent were filed against appellants and they filed the present action in equity for specific performance of the contract to convey to them the 120 acres and for damages in the amount of $1500. By consent of all parties, the actions in forcible detainer and distress for rent were transferred to the equity side of the court and consolidated with the complaint for specific performance and tried with the equity case before the chancellor.

In the complaint, appellants prayed for (1) specific performance of the contract; (2) damages from appellee

bank, $1500; (3) vacation of the deed to appellee Messamore and mortgage to appellee Landreth, and their removal as clouds upon appellants' title, and an injunction to enjoin appellees from proceeding in their actions in forcible detainer and distress for rent. Motions for temporary injunctions were denied. An amended prayer for relief was filed praying that upon the failure of both appellants and appellee bank to procure title insurance within such time as directed by the court, appellants be given a reasonable additional time within which to "elect to accept a warranty deed from the Defendant Bank conveying said premises to them" upon their paying the purchase price without requiring the obtaining of mortgagee title insurance.

Appellees filed fifteen special defenses to the amended complaint. In substance, they declared the good faith of appellee bank; that it gave the option on opinion of an attorney that it had complete title; that it endeavored to carry out the terms of the contract; that the contract was impossible of performance and to require appellee bank to comply with the conditions upon which title insurance would be issued would be unreasonable. Appellee bank also alleged that it offered to convey the premises to appellants upon payment of the purchase price, which it was willing to loan appellants, on good security, which appellants refused to accept. It is also alleged that appellants have occupied the premises, harvested and sold crops therefrom, and have not accounted for rents.

It appears from the record that Willis Cauble, owner of these lands, died seized of them in 1917, and by his will left the premises to his daughter, Cora Ethel Willey, for life, and at her death to descend to the heirs of her body "or their descendants" in fee simple; that Cora Ethel Willey is still living and has two living children, one of whom is married and has children and the other, though married, has no children, and that Cora Ethel Willey has two sisters and one brother living, who are mentioned in

the tenth clause of the will as reversioners. It is therefore uncertain in whom the premises will vest upon the death of Cora Ethel Willey. The bank derived its title by quit-claim deed from Cora Ethel Willey and her two children.

Appellees filed a counterclaim which prayed for an accounting of the rents, issues and profits of the premises, and that appellee Claude Messamore be restored to the possession of the premises. On hearing evidence, the chancellor refused specific performance of the contract and awarded appellants $500 damages for breach thereof, from which was deducted the sum of $306.86 as rent of the premises, and a decree was entered for the balance of $193.14. The decree directed appellants to deliver possession of the premises to appellee Claude Messamore and awarded a writ of assistance.

Appellants urge here that they are entitled to specific performance of the contract and that such performance is not impossible. They urge also that any claimed hardship in this case is not a defense against a demand to carry out the contract and that, in any event, appellants are entitled to receive what title the bank had. They also complain of the issuance of the writ of assistance and that the damages awarded were inadequate.

In any case seeking specific performance, the remedy, or its denial, necessarily depends to a large degree upon the particular facts of the case. (*Young* v. *Kich,* 369 Ill. 29; *Sugar* v. *Froehlich,* 229 Ill. 397.) It is consistently held, however, that where a written contract for sale and purchase of real estate is fairly and understandingly entered into and the provisions thereof are clear and specific, each party thereto is entitled, not as a favor but as a matter of right, to specific performance of it. (*Young* v. *Kich,* 369 Ill. 29; *Voris* v. *McIver,* 339 Ill. 340; *Seglin* v. *Lemein,* 334 Ill. 566; *Schmidt* v. *Barr,* 333 Ill. 494.) A contract fair and equitable when entered into does not become unfair and inequitable by circumstances arising

afterwards. (*Voris* v. *McIver*, 339 Ill. 340; *Aldrich* v. *Aldrich*, 287 Ill. 213; *Dalby* v. *Maxfield*, 244 Ill. 214.) The right to specific performance of a contract is not absolute but rests in the discretion of the court, which discretion is controlled, however, by settled principles of equity, and where it was fairly and understandingly entered into and no circumstances of oppression or fraud appear, equity will decree its enforcement. *Miedema* v. *Wormhoudt*, 288 Ill. 537; *Adams* v. *Larson*, 279 Ill. 268; *Anderson* v. *Anderson*, 251 Ill. 415.

There is no hardship or oppression in compelling the seller to do what he agreed to do when he thought it was to his advantage. (*Miedema* v. *Wormhoudt*, 288 Ill. 537.) When contracting parties are competent to, and do, fairly contract, they ought not be relieved from the agreement because it is not convenient to perform it. (*Miedema* v. *Wormhoudt*, 288 Ill. 537.) While a court of equity will not enforce specific performance when it would be unconscionable so to do, (*Stephens* v. *Clark*, 305 Ill. 408; *Miller* v. *Clark*, 301 Ill. 273,) however, the fact that the contract cannot be performed without great and unlooked for expense, is not such an impossibility or such hardship as will excuse performance. (*Miedema* v. *Wormhoudt*, 288 Ill. 537; *Wickham & Burton Coal Co.* v. *Minnesota Coal Co.* 7 Fed. 2d 872; *Bunn* v. *Prather*, 21 Ill. 217; *Walker* v. *Tucker*, 70 Ill. 527; *Phelps* v. *School District*, 302 Ill. 193.) While a contract for the sale of real estate will not be specifically enforced where it is not fair and just or where its enforcement will be oppressive and inequitable, (*Heyne* v. *Scheffauer*, 321 Ill. 266; *Raginsky* v. *Lawler*, 313 Ill. 441; *Sutton* v. *Miller*, 219 Ill. 462,) yet where the contract is free from objection and there are no oppressive or inequitable circumstances attending its enforcement, specific performance will be decreed as a matter of right. *Smith* v. *Dugger*, 310 Ill. 624; *Allen* v. *Hayes*, 309 Ill. 374; *Woodrow* v. *Quaid*, 292 Ill. 27.

In this case, the contract sought to be specifically enforced requires the appellee bank to execute a general warranty deed conveying title to the property, free from all encumbrances, and to furnish an abstract of title and a policy of mortgagee title insurance satisfactory to the United States government which is to loan the purchase price to appellants. There is no question but that the contract was knowingly and understandingly executed and there has been no change in circumstances which would render its performance inequitable. Appellee bank admits it can obtain a mortgagee title insurance policy by depositing in escrow with the title insurance company a substantial part of the sale price of the land. The fact that the bank, in order to fulfill its contract, must expend a greater sum than it anticipated when it signed the contract, does not make the performance of the contract impossible or inequitable. Appellants in good faith accepted the option given them by appellee bank, and to refuse to grant specific performance in this case is to penalize appellants through no fault of theirs. The fact that it is not convenient to perform this contract is no defense to specific performance by the bank. (*Miedema* v. *Wormhoudt*, 288 Ill. 537.) The bank knew that the government, if the option was accepted by appellants, was to furnish the entire sale price for the land, and required the bank to furnish the mortgage title policy for the full purchase price as security for the loan. This it knew was to guard against any defects in its title, and with this knowledge it entered into this contract.

Evidence of appellee bank tends to show that it first learned that it did not own the fee-simple title, but that its title was subject to a contingent remainder, after the title guaranty company had examined the abstract. Its evidence also tends to show that a requirement for the issuance of the mortgagee title policy was the deposit in escrow of one half of the sale price of the land. There

is also some evidence that such requirement was that the entire purchase price be put in escrow. Upon receipt of this information, the bank refused to execute the deed. It insists that the deposit in escrow of one half the sale price makes the performance of the contract impossible, inequitable, and unjust, and places upon the bank a hardship which it should not be required to assume.

The hardship, if it be such, arose entirely out of the bank's own contract and its negligence in not knowing what title it had. It was apprised of the fact that Cora Willey, from whom it obtained title, received title through the will of her father, Willis Cauble. The fact that it required Cora Willey's two children to join their mother in the deed, is evidence that the bank had knowledge that her title was not one in fee simple. It was the duty of the bank to make inquiry by examination of the will of Cauble and ascertain what title was conveyed to it by the deed it received, and upon its failure to trace this information to its source, it must abide the effects of this negligence.. *Franz* v. *Orton,* 75 Ill. 100.

The bank defends on the ground, among others, that it did acquire the opinion of an attorney by whom it was told that it had fee-simple title. This does not constitute a defense. What it contracted to give appellants was not an opinion of an attorney as to title, but a fee-simple title. It knew it was necessary to procure the mortgagee title guaranty because it knew that appellants were borrowing the entire purchase price from the government. Its offer to give a warranty deed to appellants and loan them the money on approved security, is not a compliance with the contract. Under the contract, the loan was to be made by the government to the appellants and the land was to be taken for the security. It is furthermore difficult to understand wherein any special hardship lies against the bank in imposing upon it the duty to procure title insurance, since, if it carry out its contract to give a warranty deed,

the possibility of making good its warranty is as great as though a title insurance policy had been issued. If the contingency, which exists here, occurs, *i.e.,* if the children of Cora Willey die prior to her death leaving children, the title in fee would go to such children, and appellee bank would become liable upon its warranty to appellants in any event.

In this case, appellee bank does not and cannot contend that it could not execute a warranty deed to appellants. After declining to perform its contract with them, it gave a warranty deed, to the property it contracted to sell to appellants, to appellee Messamore for $500 more than the agreed price with appellants, taking back a mortgage for $2500. The deed it gave to Messamore was a general warranty deed such as it had contracted to give to appellants. The effect of the deed to Messamore is the same as such a deed would have been had it been issued to appellants. The liability of the bank is the same on its warranty of title, should the contingency happen, as it would be in case it gave a warranty deed to appellants. It knew that if such contingency happened, Messamore would have no land to stand as security for that mortgage. Appellants accepted the option within the time specified. The government was ready and willing to pay the purchase price upon the execution and delivery of a warranty deed and a mortgagee guaranty policy, as provided in the option. The bank has refused to fulfill its covenant and to perform as it agreed to do.

A somewhat similar case arose in *Miedema* v. *Wormhoudt,* 288 Ill. 537. In that case impossibility of performance and hardship were complained of for the reason that the seller did not have the title to all of the land he contracted to sell, and in order to perform his contract it was necessary that he acquire title to an 80-acre tract of land, 40 acres of which he had agreed to convey to the purchaser. It is there pointed out that when the contract was

executed, the seller knew that he could only acquire title to the 40 acres he had agreed to sell by obtaining title to an 80-acre tract of which that 40 acres was a part. It was there held that it was no hardship or oppression to compel the seller to do what he agreed to do when he thought it was to his advantage; that the contract was fairly entered into, and that he ought not be relieved from it because it was not convenient to perform it.

We are of the opinion that appellants were entitled to specific performance and that the circuit court erred in denying that relief. This being true, the trial court also erred in awarding possession of the premises to appellee Messamore, and awarding him a writ of assistance, also in requiring appellants to pay rent for the premises.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to enter a decree to conform to the views herein expressed.

*Reversed and remanded, with directions.*