**William T. Kirby, as Trustee Under Trust Agreement Dated November 1, 1965, and Known as Trust No. 1 and Harold E. Sullivan, Plaintiffs-Appellees, v. Kathryn H. Carlstedt, Defendant-Appellant.**

**Gen. No. 51,696.**

First District, First Division.

July 22, 1968.

McDermott, Will and Emery, of Chicago (Hamilton Smith and Frank J. Uvena, of counsel), for appellant.

Hubachek, Kelly, Miller, Rauch & Kirby, of Chicago (James T. Griffin, of counsel), for appellees.

MR. JUSTICE ADESKO delivered the opinion of the court.

This is an appeal from a judgment on a verdict directed by the trial court in favor of the plaintiffs, for the sum of $8,700 and costs of the suit. The parties involved negotiated for the purchase of plaintiff's (Sullivan) house and after the terms were agreed upon a written form of agreement was prepared. It was signed by the record owner as trustee; Sullivan, one of the beneficial owners; and Kathryn H. Carlstedt, the purchaser. It provided inter alia that "the purchaser has deposited $8,700.00 as earnest money with the Chicago Title and Trust Company as escrowee, pursuant to the terms of the escrow agreement hereinafter mentioned . . . (and) . . . in case purchaser shall be in default under the terms hereof and such default shall continue for a period of ten days after notice by sellers to purchaser and said escrowee, sellers may terminate this contract, in which event the earnest money shall be paid to sellers as liquidated damages. . . ."

The parties were to meet at the office of the escrowee on June 12, 1961, at 10:30 a. m. Defendant's attorney, John Munro, learned that the hour of 10:30 a. m. was inconvenient to the escrowee and changed it to 9:15 a. m. He telephoned Sullivan and advised his secretary of the change. Sullivan was not told of the change and did not appear until 10:30 a. m. In the meantime, John Munro appeared at 9:15 a. m. and later went to his office. Sullivan then arranged for an appointment for the following morning at 10:00 a. m.

On June 13, 1961, at about 8:00 a. m, the defendant's husband, Fred Carlstedt, came to the Sullivan home and told Mr. and Mrs. Sullivan that Mrs. Carlstedt was very upset and wanted to withdraw her offer to buy the house. Carlstedt later testified:

> "And then I said, 'You have been to some trouble. I'll give you $500 for your trouble.' And he said to me, he says, 'I don't want your $500. I got all the money that I'll ever need. I don't care to deal with your kind of people. If your wife doesn't want the house, that's all right with me, and you can tell her there's no deal.' "

Sullivan denied this. He testified as follows:

> "Well, I was having breakfast at my home about 7:20 in the morning or maybe 7:30 and he (Carlstedt) appeared at the door and I invited him in and he told me that there was some disagreement in the family and, therefore, he wasn't going through with the deal, very nervous about it. Well, I said, 'I'm sorry to hear it. As far as I am concerned you are going through with the deal,' and then he offered me $500 to call the matter off. I said, 'No I am not interested. I will see you in court.' "

The sellers filed suit for damages of $8,700 pursuant to the above mentioned written document. The defendant

answered denying that there is or ever was a contract between her and the plaintiffs, or either of them. Subsequently, defendant filed a first amendment to her answer stating that:

> "Defendant is informed, believes, and therefore, alleges in the alternative, that if a contract was consummated as alleged in the complaint, that contract was rescinded by the mutual agreement of the parties on June 13, 1961."

The plaintiffs replied denying the allegations and legal conclusions pleaded by the defendant and answered further that if the contract was rescinded then the agreement to rescind was a contract and was barred by the Statute of Frauds. Chapter 59 of Ill Rev Stats, § 2.

At the close of all the evidence plaintiffs moved for a directed verdict which the trial judge granted and directed the jury to return a verdict in favor of the plaintiffs and assess the damage in the sum of $8,700.

On Appeal, defendant contends:

> (1) That there was no contract and defendant had the right to withdraw her offer;
> (2) That the questions of plaintiffs' acceptance of defendant's offer and whether the contract, if any, was mutually rescinded, should have been submitted to the jury;
> (3) That there was a lack of proof of actual damages to the plaintiff; and
> (4) That the trial court should have permitted defendant to offer evidence of Sullivan's prior conviction.

Defendant claims that the trial court should have submitted to the jury the question of whether or not Sullivan manifested his acceptance of Mrs. Carlstedt's (defendant) offer and the question whether the contract, if any, was mutually rescinded. There is some doubt whether

Sullivan did sign the agreement on June 12, 1961. He testified at the trial that he signed the document on the morning of June 12, 1961. He also testified that he called John Munro and told him the contract had been executed by all the parties. At a deposition, taken on February 2, 1962, Sullivan was asked: "Did you tell him (Munro) at that time that you talked to him? Did you tell him that you had signed the Defendant's Exhibit No. 1 (agreement for the sale of Sullivan's property dated June 12, 1961) . . . ?" He answered: "I don't know whether I did, whether I had signed it or not. I just assumed that he knew I signed it."

Defendant also maintains that the parties understood that there would be no contract until the closing at the Title Company. Since there was no closing, there was no contract, and the defendant has the right to withdraw her offer. The agreement recited that the purchaser had deposited $8,700 as earnest money with the Title Company as escrowee. No such deposit was made. A certified check for $8,700 payable to the Chicago Title and Trust Company was given by the defendant to Mr. Munro, her attorney. Neither this check, nor any other check was deposited by him or anyone else with the Title Company. The defendant further maintains that the opening of the escrow and the deposit of the earnest money were conditions precedent to the agreement becoming effective as a binding contract. The plaintiffs claim on appeal that the defendant is precluded by parol evidence rule from showing that they were conditions precedent.

At the trial, counsel for the defendant asked the plaintiff whether he said, "When I get the papers, if the papers are acceptable to me, we will meet over at the Chicago Title and Trust Company and close the deal and open the escrow." The trial judge sustained his own objection to that question.

Plaintiffs further maintain that this Court held in National Bank & Trust Co. of South Bend v. Becker, 38

Ill App2d 307, 187 NE2d 355 (1962) and in Chicago Title & Trust Co. v. Cohen, 284 Ill App 181, 196, 1 NE2d 717 (1936), that if the supposed "condition" sought to be shown violates the terms of the writing, parol evidence of the supposed "condition" is inadmissible. In Becker the court refused to allow testimony to modify an unconditional written obligation. In Cohen, an attempt was made to permit an unconditional obligation to guarantee to be converted into an obligation to guarantee only if someone else also guaranteed. These decisions do not apply to a situation in the instant case where no attempt was made to change the terms of the written agreement. When the instant agreement was signed, it was not complete because something remained to be done.

■ Plaintiffs' argument that an oral agreement to rescind a real estate contract is unenforceable by reason of the statute of frauds, is improper. The Statute of Frauds (Ill Rev Stats 1965, c 59, § 2) provides:

> "No action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments or any interest in or concerning them, for a longer term than one year, unless such contract or some memorandum or note thereof shall be in writing, signed by the party to be charged therewith. . . ."

■ In Voris v. McIver, 339 Ill 340, 348, 171 NE 263 (1930), the court held that a real estate contract could be rescinded orally. There appears to be little question in the instant case as to Sullivan's actual authority to rescind. He handled all the negotiations. He negotiated the price, approved the form of agreement and agreed to meet at the Title Company to close the deal. He controlled the selling, acting for the beneficiaries and the trustee. Certainly the question whether he had such authority should have been submitted to the jury.

233

██ It was error for the trial judge to deny the defendant the opportunity to introduce evidence that the opening of the escrow and the deposit of the earnest money were conditions precedent. The defendant did not seek to put conditions in the agreement. She sought to prove that the opening of escrow and the deposit of the earnest money were conditions precedent to the obligation stated in the agreement and were binding upon the parties.

██ As set forth above, Sullivan and Carlstedt told directly conflicting stories of their conversation on June 13, 1961. This created a clear question of fact for the jury as to whether there was or was not an oral agreement to rescind the contract to purchase Sullivan's home. It was therefore error for the trial court to direct a verdict for the plaintiffs.

It is unnecessary for us to consider the other questions raised by the appellant. The judgment of the trial court is reversed and this cause remanded for a new trial.

Judgment reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.