JOHN L. RAE, Appellant, vs. GEORGE E. KLOTTER, Appellee.

*Opinion filed February 24, 1928.*

1. SPECIFIC PERFORMANCE—*a bill to enforce agreement to give complainant half interest in purchase of property involves freehold.* Where the complainant has an option for the purchase of property but permits the defendant to contract for its purchase upon the latter's agreement to give the complainant one-half interest by paying one-half of the cost as it becomes due, a bill to enforce performance of the agreement to give the complainant one-half interest involves a freehold, where it appears that the defendant has completed the purchase of the property and holds the deed to the same and where the complainant contributed his share as it fell due and offers in his bill to pay the balance of his share of the purchase price.

2. SAME—*when burden is on defendant to prove cancellation of contract.* Where a complainant sues for specific performance of an agreement to give him a half interest in certain property on paying one-half of the purchase price as it falls due under a contract of purchase, and where the answer admits payment by the complainant of his share but alleges that he subsequently withdrew and agreed to allow his payment to be applied on another deal, the effect of the answer is to set up an affirmative defense, casting the burden on the defendant to prove, by the greater weight of the evidence, the cancellation of the contract.

APPEAL from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding.

WYMAN, HOPKINS, McKEEVER & COLBERT, and LAGGER & BLATT, (AUSTIN L. WYMAN, of counsel,) for appellant.

DONOVAN, BRAY & GRAY, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause comes on appeal from the circuit court of Will county. The appellant filed a bill for specific performance of the contract hereinafter set out. On hearing

of evidence in open court the chancellor dismissed the bill for want of equity.

It appears that the appellant had an option with Henry Hohmann to purchase certain farm land in Will county, and at his suggestion the appellee entered into a contract with Hohmann to take the title in the appellee's name. The contract of the appellant and the appellee is as follows:

"It is agreed and understood that G. E. Klotter is to purchase Henry Hohmann farm and that John L. Rae shall have a right to a one-half interest in the purchase by paying his one-half of cost as it becomes due.

J. L. RAE,
GEORGE E. KLOTTER.

"This is a temporary agreement, to be amended on agreement when first payment of $1250 is made.

J. L. RAE,
GEORGE E. KLOTTER."

The bill alleges that Klotter entered into the contract with Hohmann on June 18, 1925. The amount of land contracted for by Klotter was 108 acres, for which $2500 was paid at the time of the making of the contract and the sum of $2575 was to be paid on March 1, 1926, when a deed should be delivered and a purchase money mortgage executed for the sum of $18,225. The contract between Klotter and Rae was also executed during the day on which Klotter entered into the contract with Hohmann. On June 26 following, Rae paid the sum of $1250 to Klotter, who gave him the following receipt:

"Received of J. L. Rae, $1250—Hohmann deal.

G. E. KLOTTER."

The prayer of the bill is for specific performance of the contract of June 18 between the appellant and the appellee and for general relief. The answer admitted the allegations of the bill concerning the execution of the agreement by which the appellant was to have a one-half interest in the purchase of the land by paying one-half the cost thereof; admits that the appellee entered into the contract for the purchase of the Hohmann property and paid Hohmann

$2500 on the contract and that the appellant paid him the sum of $1250 on the Hohmann deal, but avers that in June, 1925, he and Rae agreed that Rae's interest in the Hohmann contract should be canceled and the $1250 paid by him should apply on a certain other contract for the purchase of a farm of 434 acres of one Salinger; that he (Klotter) made arrangements for his part of the first payment on the Salinger land, but owing to the fact that Rae failed to pay an additional $3750, which was to be his share of the initial payment on that land, the deal was not consummated. The answer alleges that Klotter had offered to re-pay the $1250 which Rae had paid on the Hohmann land, but Rae refused to accept it.

Counsel for the appellee suggest that this court has no jurisdiction because no freehold is involved. We are, however, satisfied that this is not true. The prayer was not only for specific performance of a contract to permit the complainant to share in a contract for the purchase of the land, but was also for general relief. The record shows that at the time of the hearing Klotter had completed the contract and held the deed to the Hohmann land. Therefore, if under this contract the appellant is entitled to recover he would be entitled to a decree awarding him a one-half interest in the premises upon his payment of the balance of one-half of the purchase price, as he by his bill offers to do. It is evident that the result of the decree of the court below dismissing the bill was to deny the appellant a freehold, and we are of the opinion, therefore, that this court has jurisdiction.

The only other question involved is one of fact. The appellee admits the execution of the contract between himself and the appellant and the payment of the $1250 thereon. In his answer the appellee states that "it was agreed between this defendant and complainant that the $1250 paid by complainant on the purchase of the Hohmann land should apply on the Salinger land, and that complainant

would turn over to this defendant an additional $3750 to make up the sum of $5000 as complainant's share of the initial payment to be made on the Salinger land, and it was then and there agreed that complainant should relinquish and abandon all interest in the Hohmann purchase, and that said contract of purchase between this defendant and said Hohmanns should be the exclusive contract to this defendant and that complainant should have no further interest therein," etc.

This answer, it will be observed, admits the execution of the contract; admits the payment by the complainant of $1250 was "on the purchase of the Hohmann land," but sets up a subsequent agreement by which the $1250 so paid should apply on the purchase of the Salinger land. The effect of the answer was to set up an affirmative defense which casts the burden of proof on the appellee to prove, by the greater weight of the evidence, the cancellation of his contract with the appellant. (*Supreme Tent K. O. T. M.* v. *Stensland,* 206 Ill. 124.) The testimony on the controverted question of cancellation consists of that of the appellant, the appellee and one Grundin, an attorney at law. The appellee testified that the appellant agreed to withdraw from the Hohmann deal and that the $1250 should be paid on the Salinger deal. In this testimony he is corroborated by the testimony of Grundin, who the evidence shows represented one Meyer, a third party whom Klotter and Rae sought to interest in the Salinger deal. Grundin testified that on his inquiry as to where Rae was to secure his funds, Rae said that Klotter and he had another deal from which he had withdrawn and he had the money to go into the Salinger deal; that he had sold his equity in that deal to Klotter. The appellant denies that he made any statement of that character either to Klotter or in the presence of Grundin. The hearing of this evidence was before the chancellor, and this court will not overturn his findings unless satisfied from an examination

of the record that they are wrong. Practically the only dispute in the evidence is as to the cancellation of the contract with reference to the appellant's interest in the Hohmann land. This contract was dated June 18. On that day the contract of purchase was entered into by Klotter with the Hohmanns. It appears that the appellant also had an option on the Salinger property, and about June 20 he and Klotter sought to interest Meyer in the purchase of the Salinger land. Grundin testified that on the 24th of June he had a conversation with Klotter and Rae in which Rae stated he had dropped out of the Hohmann deal and would have money enough to contribute his share to the Salinger purchase. It appears from his testimony that after that conversation on June 24 he advised his client, Meyer, to refrain from going into the Salinger deal, and that he had no further conversation with Klotter or Rae after that time. It will be observed that this is two days prior to June 26—the date on which the appellant paid the appellee the sum of $1250 and received from him a receipt for such payment—"Hohmann deal." That the payment was received by the appellee on the purchase of the Hohmann land is admitted by his answer. It appears from the testimony that after Meyer had turned down the purchase of the Salinger property Klotter and Rae talked about buying it themselves. Klotter testified that he went to his bank and borrowed $20,000 and took out a certified check for $10,000 to be ready to close the Salinger deal when Rae should have put up his additional sum of $3750, which, with the $1250 already paid by Rae, would make $5000, which represents his part of the initial payment on the Salinger purchase. The evidence also shows that on June 25 there was prepared by one Heineman, Salinger's attorney, and one Johnson, Klotter's attorney, a contract for the purchase of the Salinger property, title to be taken in the name of Klotter. This was after the negotiations with Meyer were abandoned and after the time when, as the

appellee's evidence tends to show, the appellant had relinquished his interest in the Hohmann deal. It, however, was prior to June 26, when the receipt was given for a payment of $1250 on the Hohmann deal. Notwithstanding the failure of all of these transactions between the appellant and the appellee, the appellee did not return the $1250 to the appellant. While his answer avers that he offered to re-pay this money and the appellant refused to receive it, yet the abstract does not show that he testified to such offer. The appellant insists that no such offer was made. The fact of his retention of the $1250 argues most strongly for the appellant's contention that it was paid on the Hohmann deal. Had it been paid on the Salinger deal, which fell through, Klotter would naturally have returned it. As we have seen, the contract with Hohmann was dated June 18, 1925. The deed was to be executed on March 1, 1926, on the payment of $2575. The bill in this case was filed on September 21, 1925, or before the time for the completion of Klotter's contract with Hohmann but after Klotter's refusal to permit Rae to further participate. If, therefore, the $1250 was paid on the Hohmann deal, which was consummated by Klotter, it would naturally be retained by him.

The evidence in the record, including the documentary evidence, when considered with the sequence of events, forces us to the conviction that the appellee has not discharged the burden cast upon him by his affirmative defense of cancellation of the contract, and that the finding of the chancellor was against the manifest weight of the evidence.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*