(No. 19219.—

Jerry R. Selman, Appellant, *vs.* John R. Geary *et al.* Appellees.

*Opinion filed April 20, 1929—Rehearing denied June 6, 1929.*

Harry H. Krinsky, for appellant.

Frank C. Hill, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Jerry R. Selman (hereafter referred to as appellant) filed a bill in the superior court of Cook county during June, 1926, seeking the specific performance of a written agreement entered into on December 22, 1925, between himself and John R. Geary and wife for the exchange of certain pieces of improved real estate owned by the respective parties and located in the city of Chicago. The bill as amended alleged that appellant was, and always has been, ready, willing and able to perform his part of the contract and has offered to convey his premises to appellees, Geary and wife, but that they have refused and continue to refuse to make the exchange of real property. The amended bill was answered by appellees, who in substance admitted the execution of the agreement but denied appellant was always ready, willing and able to perform the contract or that appellees refused to carry out their agreement. The answer admitted appellant furnished and delivered an opinion of title upon his property, but that such opinion as prepared by the Chicago Title and Trust Company did not show good title in appellant but disclosed an encumbrance of $40,000 which had not been released and was a lien upon the property, and which was contrary to the terms of the written agreement. The answer also set up that on February 9, 1926, appellant had rescinded the contract and such rescission was accepted by appellees. A replication was filed by appellant to the answer of appellees. Appellees also filed a cross-bill to establish a cancellation of the written agreement. An answer and an amended answer to the cross-bill were later filed by appellant. The cause was referred to a master in chancery, who took the proof but whose term expired before making his report to the court. By written stipulation of the parties the cause was heard by the court upon the evidence taken before the master and no further evidence was offered by either party.

The chancellor entered a decree dismissing the bill of appellant, as well as the cross-bill of appellees, for want of equity. From that decree appellant perfected an appeal and has brought the case here for review.

The material facts presented by the record are, that the parties first met each other during the latter part of December, 1925, in the office of James J. Glassner, attorney for appellant, and there entered into a written agreement for the exchange of certain city property owned by them. The contract provided, among other things, that the property to be conveyed by and belonging to appellant was to be subject to a first mortgage of $65,000, and that in case material defects were found in the title to the respective properties and so reported by the objector, such defects should be cured within sixty days after notice thereof, or the contract, at the option of the objecting party, would become null and void. Appellee John R. Geary is a Chicago lawyer of over thirty years' experience. He knew there was an encumbrance of $40,000 against appellant's property, and to some degree he attempted to assist appellant in obtaining a loan of $65,000 upon appellant's property to replace the other loan. The parties made arrangements to secure from the Chicago Title and Trust Company opinions of title upon their respective properties, and Geary delivered the opinion of title upon his property to appellant about January 8, 1926. Appellant appears to have received the opinion of title upon his property on Saturday, February 6, 1926. He called Geary by telephone at the latter's house that evening, suggesting that he deliver the opinion to Geary at his home the same evening. The latter stated he would not be at home and told appellant to deliver it at his (Geary's) office. Appellant delivered the opinion of title to Geary at his office on Monday morning, February 8. Geary testified that appellant said he was going to Florida and wanted to see if the deal could be closed that afternoon; that in looking over the opinion he

saw the $40,000 mortgage shown and also saw a $65,000 mortgage described, and he asked appellant why the $40,000 mortgage had not been released; that appellant said that mortgage was a bond issue and he could not have it released because a sixty-day notice was required to call in the bonds, but that the deal could be closed and the bond issue mortgage could be taken care of later; that witness told appellant to postpone his trip for three or four days, have the record cleared and the mortgage released, and he would then consider a time for closing the deal. Geary also testified that the following morning appellant called witness by telephone, inquiring if the deal could be closed that afternoon and stating that he was leaving that night and the deal had to be disposed of one way or the other before he went; that appellant was again asked whether the $40,000 mortgage had been released, and he replied it could not be paid for sixty days; that witness refused to fix a time to close the deal until the mortgage in question was released, and appellant said he was going to call the deal off. Geary further testified that upon his return from lunch on the same day, Tuesday, February 9, appellant was waiting in the private office of Geary; that appellant had a paper in his hand; that he stood up and said, "The deal is off and I want my papers; you have got my papers," and handed Geary his opinion of title. Appellant was excited, and Geary said, "Selman, if this is what you want I shan't object." Geary took appellant's opinion of title from his files and as he handed it to appellant the latter took it and ran out of the door. He returned shortly for his hat, which he had left in his haste.

Stephen Knepper, who was nineteen years of age at the time of the hearing and who had been employed for three years as a clerk in Geary's law office, testified in substance that appellant called Geary's office by telephone on the morning of February 9, 1926; that appellant was in Geary's office on the afternoon of the same day; that he told Geary

the deal was off and handed Geary his opinion of title, took back the opinion of title on his own property, and Geary told him, "All right; if you want it off then it is off."

Appellant's testimony of what took place at Geary's office is, that when he delivered his opinion of title to Geary on Monday morning, February 8, he said he had to go to Florida and would like to close the deal within the next day or so; that Geary told him to return next day and he would tell him when the deal could be closed; that he returned the next afternoon to Geary's office and again told him that he would like to close the deal as he wanted to go to Florida, but that if Geary did not want to close it then, appellant would either have to turn the matter over to his attorney, Glassner, to close or wait until his return from Florida. To this Geary agreed, and appellant asked for the opinion of title on his own property to use in straightening out the first mortgage. The opinion was delivered to appellant and he in turn delivered Geary's opinion of title to him, as appellant had no further use for it. Appellant said he did not think that he had any telephone conversation with Geary's office on the morning of February 9, and denied demanding the deal be closed at once or on that day, or that any scene took place in Geary's office, or that the deal was called off. He further testified about having made an arrangement with the Noel State Bank on December 23, 1925, for calling in the balance of the bond issue in amount of $35,000, representing the original mortgage upon his property involved in the real estate exchange, and the payment by him of $700 bonus necessary to call the bonds. The proof shows appellant went to Florida on February 15, 1926, and returned a month later.

James J. Glassner testified that he communicated with Geary by telephone at the latter's office on the afternoon of February 9; that he told Geary that Selman had called him with reference to closing the real estate deal, and Geary replied that Selman had been at Geary's office and said he

was going to Florida and the deal would have to be closed that day or the next or the deal would be off. Glassner expressed surprise and said he would call Selman, which he did, and then again talked with Geary over the telephone, telling him that there must be some mistake from Selman's statement of things; that Selman had not called the deal off; that he was going to Florida, and if the deal could not be closed that witness would close it or it could wait till Selman's return, and that Selman was ready, willing and able to complete the transaction. Geary replied the deal had been called off by Selman, and because of his conduct Geary refused to go further with the deal. Thereafter, on February 13, Glassner, in behalf of Selman, forwarded to Geary by registered mail a written offer to complete the real estate exchange. To this communication Geary replied in writing and again refused to perform the agreement with appellant because of the latter's "unwarranted conduct." A further tender of a warranty deed and a guaranty policy upon the property involved was made by Glassner, appellant and one Daus to Geary at the latter's home during the early part of May, 1926, and this tender was also refused.

The contract, as well as the proof, shows that in the exchange of properties and the delivery of deeds thereto Geary was to pay appellant $30,000 in cash. Glassner testified that Geary knew that the first mortgage of $40,000, which had been reduced to $35,000, was to be paid off as the deal was closed, in one transaction. He further stated that the first mortgage was not actually paid off until April 21, 1926, because no further effort had been made to pay it at an earlier date after Geary had absolutely refused to make the trade. The record does not show that there has been any change in the title of the properties or in the condition of the parties since the agreement was made.

The chief contentions urged by appellant for a reversal of the decree are, that any objections to his title are not a good defense in this action because appellees have based

their refusal to perform the contract upon the ground that the contract was rescinded by appellant, and that the evidence of appellees is not sufficient to establish a rescission of the written agreement.

In the brief of counsel for appellees it is stated that since February 9, 1926, Geary has steadfastly relied on Selman's rescission of the contract and has refused to have anything further to do with the exchange of properties. That statement, coupled with the answer and proof in the record, warrants the conclusion that if appellees have any defense to appellant's action it must be based upon the alleged rescission of the contract by appellant. Where a party to a contract has refused to perform the same and states the specific reason therefor he waives other grounds or contentions for non-performance. *Gibson* v. *Brown,* 214 Ill. 330; *Vincent* v. *McElvain,* 304 id. 160.

It is unnecessary for us to set out the evidence in more detail than we have already done. The chief conflict in the testimony concerns what happened at and what was said in Geary's office, and thereafter between Geary and appellant's attorney. Geary takes the position that the contract was called off or rescinded by appellant, and to some degree his testimony is corroborated by the young man who had for three years been a clerk in Geary's office. Appellant maintains that he did not rescind the contract at any time and tells an entirely different story of his conversations with Geary in the latter's office. The evidence of Glassner as to his conversations with Selman and his own dealings with Geary tend to add weight to appellant's version of the case. It appears that appellant informed appellees on several occasions after the conversation in Geary's office, of his willingness and ability to carry out the written agreement, and the record does not disclose his inability to do so. If his testimony is true he appeared to be anxious to close the deal, and had gone to some expense in arranging the preliminaries necessary to the retirement of

the bonds representing the balance of the $40,000 mortgage upon his property, though only a small part of that mortgage became due until October, 1926, and the balance one year later. It appears from the evidence, though not explicitly stated in the agreement, that the closing of the deal and the release of the $40,000 mortgage were to be substantially contemporaneous acts. By the contract appellees were to pay $30,000 in cash. That amount the parties understood was to be applied to the discharge of the $40,000 mortgage, which indebtedness was a bond issue and had been reduced $5000. Appellant paid the. trustee for the bondholders under the $40,000 mortgage the sum of $700, (the bonus required for exercising the option of paying the bonds before maturity,) and on February 8, 1926, the trustee had received all but two of the bonds from the holders. Appellant had also incurred liability for commissions and other expenses in getting a $65,000 mortgage on his premises. It would seem most unreasonable that after he had done all these things he should rescind the contract. Geary said that after his and appellant's interview on February 9, 1926, he declined to have anything further to do with the exchange of properties, though appellant was able and willing to perform the contract, but says he (Geary) "steadfastly relied on the rescission of the contract." The facts and circumstances proved corroborate appellant that he had no intention of rescinding the contract. Geary testified that in response to his suggestion that appellant could go to Florida and leave the closing of the deal to Glassner, appellant's attorney, appellant replied that he had no attorney. The facts are that Glassner had represented appellant from the time the contract was made; that he insisted on Geary completing the deal; that he tendered performance on behalf of appellant and continued to represent him after appellees refused to go through with the deal. All these things being considered with the other proof, appellees did not sustain their defense by the weight of the

evidence, as the law required them to do. We are convinced from the testimony that appellees had concluded they did not want to make the deal. Geary testified he would have gone through with the deal if appellant had not rescinded it but he did not consider it any prize.

There was nothing in writing relative to the alleged rescission. Parties to a written contract may not only modify it orally but may rescind it in the same manner, although evidence of rescission of a written contract by a subsequent parol agreement must be clear, positive and above suspicion. (6 R. C. L. par. 306, p. 922.) Where an abandonment or waiver is relied upon, it must be shown to have been the clear intention of the parties to abandon the contract previously entered into. Courts will indulge no presumptions in favor of a waiver of a contract where specific performance is attempted to be enforced, nor will a waiver or abandonment be inferred upon slight proof. A parol waiver or discharge of a written contract must be clear and explicit and be proved beyond a doubt. (*Evans v. Gerry*, 174 Ill. 595.) The burden of establishing a rescission of the written contract was upon appellees. *Rae v. Klotter*, 329 Ill. 59; *Supreme Tent K. O. T. M.* v. *Stensland*, 206 id. 124.

In this record we have not the benefit of the master's conclusions, and the chancellor did not hear or see the witnesses. We have given the record careful consideration and are of opinion that the evidence offered by appellees does not establish a rescission of the written agreement, which was evidently fairly entered into by the parties.

The decree of the superior court is therefore reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*