**Rockwood Sprinkler Company, Appellee, v. The Phillips Company, Appellant.**

**Gen. No. 34,396.**

268

Heard in the second division of this court for the first district at the June term, 1930. Opinion filed February 23, 1932.

CHURCH, HAFT, ROBERTSON & CROWE, for appellant.

TAYLOR, MILLER, BUSCH & BOYDEN, for appellee; FRANCIS X. BUSCH and JAMES J. MAGNER, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

By its amended declaration, the plaintiff, Rockwood Sprinkler Company, sued the defendant, The Phillips Company, in assumpsit. The case was tried before the court, with a jury, and there was a verdict returned for the plaintiff in the sum of $13,325. Judgment was entered on the verdict and the defendant has appealed.

The amended declaration consists of two counts; the first pleads a written contract between the plaintiff and the defendant for the installation of a sprinkler system, and alleges the installation of the system by the plaintiff and the failure of the defendant to pay for it. The second consists of the common counts. The defendant filed three pleas: the first, the general issue; the second alleged that the contract between the plaintiff and the defendant was cancelled and abandoned by mutual agreement on or about February 25, 1925, and the third is to the effect that if the plaintiff furnished the materials and labor as alleged they were furnished to the Hotel Theodore Corporation and not to the defendant. The plaintiff filed a similiter to the first plea, a replication to the second, and a general demurrer to the third, which demurrer was sustained. The defendant, by leave of court, filed two additional and amended pleas, the first pleading *res judicata* and the second estoppel by verdict. To the last two pleas the plaintiff filed general demurrers, which were sustained.

The plaintiff is a corporation, engaged in the business of manufacturing, selling and installing automatic sprinkler equipment in buildings for the purpose of protection against fire. The defendant corpo-

ration "does not manufacture sprinkler equipment, but their principal business has been financing sprinkler equipment since they were organized. They own a sprinkler head and they developed and manufactured an automatic sprinkler head and dry valve, but we never have built it for commercial purposes. Substantially our operation is to solicit business from owners of buildings or contractors for buildings who want a sprinkler system and arrange a contract by which we put in the sprinkler system and take the first payments and then contract with some particular manufacturing company to manufacture that particular sprinkler system; or some owner or builder might want a sprinkler system and be unable to arrange credit terms and they would come to us to finance the job."

The written contract upon which the suit was brought reads as follows:

"Rockwood Sprinkler Company

Executive Offices

134 So. LaSalle St., Chicago, Illinois

Chicago Office, June 10, 1924

"To The Phillips Company,
Chicago, Illinois.

Proposal

"The Rockwood Sprinkler Company proposes to furnish and install the equipment hereinafter specified; and, in the event of the acceptance of this proposition, it is mutually agreed by the Rockwood Sprinkler Company and the Owner that:

"The Owner is to receive material and is to provide sufficient space for same and proper facilities for the prosecution of the work, together with light and elevator service if on the premises.

"The Owner is to obtain all permits that may be required for the installation of the Automatic Sprinkler Equipment herein specified.

"The Rockwood Sprinkler Company will prepare detail plans of the Automatic Sprinkler Equipment

herein specified, which plans shall be approved by the Underwriters and submitted to the Owner before work of installation is commenced.

"Any additional labor or material which may be required by the Rockwood Sprinkler Company to carry on and complete the work, but which is not specifically described or enumerated in the annexed specifications shall be furnished by the Owner at the Owner's expense as and when required, otherwise the Rockwood Sprinkler Company is authorized to furnish the same for the Owner's account, at market prices. Any expense occasioned the Rockwood Sprinkler Company by delay in procuring such labor or material shall be extra to the contract price, and shall be paid by the Owner.

"If the work be discontinued by reason of fire, flood, strikes, lockouts, or other causes, not the fault of the Rockwood Sprinkler Company, there shall be immediately due and payable from the Owner, on account of the work, at the option of the Contractor, a sum equal to the expense of the Rockwood Sprinkler Company, paid or incurred for materials, labor and service up to the time of such discontinuance.

"It is further agreed that title to the materials and equipments furnished by the Rockwood Sprinkler Company is to remain in the Rockwood Sprinkler Company, and that said materials and equipments are to be the personal property of the Rockwood Sprinkler Company, however they may be affixed to the realty, until all payments therefor shall have been fully made in cash; and that if default is made in any of the payments according to the terms herein specified, the Rockwood Sprinkler Company shall be entitled to enter the premises where said materials and equipments may be located and take immediate possession of and remove the same as its property, without prejudice to rights of action for further damages which the company may suffer, and that the Owner will perform all acts which may be necessary to perfect and assure such retention of title to said ma-

terials and equipments in the Rockwood Sprinkler Company.

"All earth, carpenter or mason work and painting required for the system herein specified, including all foundations, supports, staging and enclosures, shall be furnished and paid for by the Owner, unless otherwise herein specifically stated.

"Any loss or damage by any cause, not the fault of the Rockwood Sprinkler Company, which may occur to its materials, tools, equipment, or the labor expended thereon, while in and about the Owner's premises, shall be borne and paid by the Owner; and the Rockwood Sprinkler Company shall, under no circumstances, be held liable for any loss, or damage, by delay, or other cause beyond its control.

"The Rockwood Sprinkler Company shall not be liable for any loss or damage arising from or because of the care or character of walls, foundations or other structures not erected by the Rockwood Sprinkler Company.

(Here follow numerous specifications.)

. . .

"This proposition is submitted in duplicate and is withdrawn if not accepted within ten (10) days from its date, unless the time for acceptance is extended in writing. Your acceptance, when approved by an Officer of this Company, will constitute a contract between us.

"ROCKWOOD SPRINKLER COMPANY
By B. B. Heath
ROCKWOOD SPRINKLER Co.,
Approved:
Per R. S. Ripple

"We hereby accept the above proposal
this 21st day of June, 1924
The Phillips Company
Per B. E. Phillips,
Secy. & Treas."

At the time the defendant entered into the above contract it also entered into a financing contract with the Hotel Theodore Corporation, the owner of the building in which the system was installed. There is no doubt that the defendant was a principal to the contract upon which the suit was brought. The second plea filed by the defendant admits that it was entered into between the plaintiff and the defendant, and alleges that on February 25, 1925, "the plaintiff and the defendant, The Phillips Company, agreed together to cancel and abandon and did cancel and abandon the contract theretofore entered into between them as alleged in the plaintiff's amended declaration, so that from and after said date there was no contract or agreement between this defendant, . . . and if the plaintiff furnished any of the materials, labors or services in the aforesaid first count set forth, the same were furnished to the Hotel Theodore Corporation and not to this defendant." The defendant accepted the proposition contained in the instrument through its secretary and treasurer, and the acceptance was approved by R. S. Ripple, the secretary, treasurer and general manager of the plaintiff. Correspondence subsequent to the making of the contract and conversations between the parties prove beyond all doubt that the defendant was a principal to the contract and not an agent of the Hotel Theodore Corporation. The defendant, in its brief, concedes that it executed the contract.

The defendant contends that "the plaintiff's demurrers to the defendant's additional and amended pleas should have been overruled." These pleas alleged, in substance, that there had been pending, in the superior court of Cook county, a proceeding in chancery in which the Chicago Title and Trust Company had filed its bill for foreclosure against the Hotel Theodore Corporation and others for the purpose of foreclosing a certain trust deed which consti-

tuted a lien upon the premises of the Hotel Theodore Corporation; that the plaintiff had filed its intervening petition in the cause, had made the defendant a party to this petition and had procured summons to issue; that the defendant entered its appearance in the proceedings and became a party thereto; that in the petition the plaintiff alleged that it was a subcontractor and sought to impress a lien upon the premises in question, and that the basis of the claim of the plaintiff in said petition was the contract sued on in the instant case. In the first plea the defendant alleges *res judicata,* and in the second estoppel by verdict. There is no merit in the instant contention. It appears from each of the special pleas that before evidence was taken as to the foreclosure suit and the intervening petition of the plaintiff, "said intervening petition of Rockwood Sprinkler Company was by stipulation dismissed as to the defendant, The Phillips Company, without prejudice." The plea further recites that the decree in the foreclosure matter dismissed the intervening petition of the plaintiff for want of equity and that no appeal or writ of error was taken from the decree. The defendant was not a party to the decree. A mechanic's lien proceeding is in the nature of a proceeding *in rem.* The proceeding, under the statute, is additional or cumulative of such other remedies for the enforcement of the contract out of which the lien arises, as the party may have either against the person or property. Independently of the lien given by the statute, a creditor may enforce his contract in any appropriate common law action, but can have one satisfaction only. (See *Delahay v. Clement,* 4 Ill. 201; *West v. Flemming,* 18 Ill. 248; *Templeton v. Horne,* 82 Ill. 491; *Erikson v. Ward,* 266 Ill. 259; *Olson v. O'Malia,* 75 Ill. App. 387.) It is obvious that the mere fact that the plaintiff failed to enforce a mechanic's lien against the property would not bar the instant action. Further, it appears that

the defendant was dismissed from the mechanic's lien proceeding, by stipulation and "without prejudice," and was not a party to the decree, and therefore is not in a position to claim any benefit from the decree.

The second additional special plea asserts estoppel by verdict. "An estoppel by verdict is but another branch of the doctrine of *res judicata*, and it rests upon the same principle of law,—that is, that a matter once litigated between parties to a final judgment in a court of competent jurisdiction cannot again be controverted. When this doctrine is applied to a single question or point arising in the course of litigation which has finally been adjudicated it is designated as an estoppel by verdict, and the same question or point cannot again be litigated between the same parties in the same or any other court at law or in chancery, and neither party, nor their privies, will be permitted to allege anything inconsistent with the finding upon that question." (Citing authorities.) (*Chicago Title & Trust Co. v. National Storage Co.*, 260 Ill. 485, 493.) To assert estoppel by verdict it must appear that the defendant could have been prejudiced by a finding in the mechanic's lien proceedings. "The doctrine of *res judicata* is, that a point once adjudicated by a court of competent jurisdiction may be relied upon as conclusive upon the same matter, as between the parties or their privies, in any subsequent suit, in the same or any other court, at law or in chancery. But the doctrine has no application against or in favor of anyone not a party or privy. No one not a party to the judgment can claim the benefit of it." (Citing authorities.) (*People v. Amos*, 246 Ill. 299, 303. See also *First Nat. Bank of Peoria v. Peoria Watch Co.*, 191 Ill. 128.) But the defendant argues that it should be considered as a privy of the Hotel Theodore Corporation and that therefore the plea of *res judicata* and also the plea of estoppel by verdict should be sustained. We have examined carefully the strained

argument in support of this contention and we find it
without merit. The defendant argues that if the
instant judgment is affirmed and the defendant should
seek to recover against the Hotel Theodore Corpora-
tion under its contract with that corporation the Hotel
Corporation might be indirectly deprived of its
"solemn adjudication" against the plaintiff in the
foreclosure proceedings; that if the instant judgment
is sustained and the defendant pays it, it would be-
come the owner of the sprinkler system and entitled
to replevin it from the Hotel Corporation and in such
a proceeding the latter would be deprived of the benefit
of its judgment obtained against the plaintiff in the
mechanic's lien proceedings. This argument can
hardly be taken seriously. The defendant has its
independent contract with the Hotel Corporation, and
in a proceeding under it the relation between the
plaintiff and the defendant under the contract in the
instant case would not be a pertinent issue.

The defendant next contends that its motion for a
directed verdict at the close of all the evidence should
have been allowed. In support of this contention the
defendant first argues that the instrument sued on
imposes no obligation on the defendant to pay plain-
tiff for the sprinkler system. As we have heretofore
stated, the defendant, in its plea, admits that it
was a party to the contract, and a number of facts
and circumstances in evidence show beyond all doubt
that it recognized that it was a principal to the con-
tract and bound by its provisions. The last sentence
of the contract is as follows: "Your acceptance, when
approved by an Officer of this Company, will constitute
a contract between us." The instrument was signed
by the plaintiff and bore the acceptance of the defend-
ant company, by B. E. Phillips, its secretary and
treasurer, and it bears the stamped approval of R. S.
Ripple on behalf of the plaintiff. Under date of Au-
gust 9, 1924, the defendant wrote the following: "For

our guidance in the matter of payments to you, etc., we would appreciate your scheduling approximately when you expect the materials will be shipped and about when you think it will be finished.'' Under date of February 24, 1925, in a letter sent to the plaintiff, the defendant said: "Referring to *our contract with you* for sprinkler equipment on the Hotel Theodore property . . . *it is our understanding that you desire to accept payment of $3,850.00 direct from our customers, the Hotel Theodore Corporation,* in securities other than cash, and this is to advise you that *our contract with you will not be jeopardized in any way, nor will the contract be invalidated in any manner by your accepting this payment direct from the Hotel Theodore Corporation, and that we are charging your account with the sum of $3,850.00 as payment by our customers direct to you, and would ask you to credit our account in this sum.*" The body of the contract was a printed form that was used by the plaintiff in the conduct of its business. In the printed text the word "owner" appears instead of the name of the defendant, and the defendant argues from this fact that the contract does not require it to do anything and that the word "owner" might have been intended to refer to the Hotel Corporation. This argument is without the slightest merit. When the entire instrument is read in the light of documentary and oral evidence, which shows clearly that the defendant always regarded itself as a principal to the contract, the patent error in leaving the word "owner" in the contract cannot aid the defendant. In a further effort to escape the effect of the judgment the defendant seeks to argue, in this court, that in signing the contract it acted as the representative or agent of the Hotel Corporation. It is sufficient to say, in answer to this argument, that neither by plea nor by evidence did the defendant raise such a point in the lower court. Not only by its plea did the defendant admit

that it was a principal to the contract, but in the evidence offered by it in support of its claim that the plaintiff and the defendant abandoned the contract by mutual consent, its officer admitted that the contract was entered into by the defendant. The defense of abandonment of the contract is based upon the theory that the defendant was a principal to the contract.

Another argument in support of the instant contention is that the evidence offered by the plaintiff is insufficient to establish performance under the terms of the contract. There is no merit in this contention. The plaintiff made out a clear prima facie case in this regard and the absence of merit in the defense to this action is clearly shown in this, that the defendant did not offer a scintilla of evidence in rebuttal of the same. If the sprinkler system had not been installed, or if it had not been installed in accordance with the terms of the contract, it would have been an easy matter for the defendant to have offered proof in that regard. It did not do so.

The defendant next contends that "the trial Court erroneously admitted improper evidence offered by the plaintiff." It first argues that "plaintiff's Exhibits 1 to 11, inclusive, were improper under the issues." The point made is that the instrument sued on imposed no obligation on the defendant to pay the plaintiff for the sprinkler system installed on the premises of the Hotel Theodore. We have heretofore disposed of this contention.

The defendant next contends that the court erred in admitting certain evidence offered by the plaintiff to prove performance by it under the contract. It is unnecessary for us to follow the labored argument of the defendant in support of this contention. That the plaintiff made out a prima facie case of performance by competent evidence is clear, and as the defendant failed to offer any proof in rebuttal of this evidence, it follows that even if the court admitted improper

evidence bearing upon that issue such action would not constitute reversible error.

The defendant next contends that "the trial Court refused to admit proper evidence offered by the defendant." The defendant claims that its exhibits numbers 26, 29 and 30 were erroneously excluded. These were self-serving declarations and the ruling of the court was proper. Defendant's exhibit 6 for identification was properly refused because it contained no statements or admissions that were relevant to the issues. The defendant offered in evidence certified copies of orders that related to the matter of the receivership of the Hotel Theodore property in the foreclosure proceedings. The court did not err in excluding the offered evidence. The defendant also contends that the court erred in excluding certain correspondence "between the Challenge Company, Hotel Theodore Corporation and the Phillips Company." It is sufficient to say in answer to this contention that the defendant admits, as it must, that the letters contained in the correspondence were not binding upon the plaintiff "or that they proved or tended to prove the statements therein contained." As we understand the argument of defendant its position is that these letters were admissible as part of the *res gestae*, but it is plain that they were not. The defendant next contends that the court erred in excluding certain conversations between B. E. Phillips and Heim, the former president of the Hotel Corporation. As it is conceded that no one representing the plaintiff was present at the conversations, the ruling of the court was clearly proper. The sole argument of the defendant is that "since the *Thaw* case we had thought it fairly well understood that such testimony under such circumstances was competent." We are at a loss to understand just what the counsel means by this argument.

The defendant next contends that the court erred in refusing to allow it to offer evidence to the effect that the Hotel Corporation never paid the defendant any money in connection with the sprinkler instalment, and it insists that this testimony was competent as tending to sustain its claim that the contract had been abandoned. The contention is, of course, without the slightest merit.

The defendant next contends that "the trial Court erroneously and improperly sustained objections to the argument of defendant's counsel." This contention is without the slightest merit. The record shows that only one objection was made by counsel for the plaintiff during the argument of the counsel for the defendant. The latter was attempting to argue to the jury that they had a right to infer what was contained in several letters written by the defendant, but which had been excluded from the evidence. The action of the court in sustaining the objection to such an argument was, of course, a proper one.

The defendant next contends that the court erred in giving to the jury plaintiff's instruction number 2, and argues that the instruction "cast upon the defendant the burden of proving by a preponderance of the evidence the agreement of cancellation, and directed a verdict unless this was done," and the defendant argues that the burden of proof on this issue was upon the plaintiff. There is no merit in this contention. The defendant, by its special plea, alleged that the written contract had been abandoned by an oral agreement between the plaintiff and the defendant. The plaintiff filed a replication to this plea. This was an affirmative defense and the burden was upon the defendant to prove it. There was nothing in writing relative to the alleged abandonment or cancellation. "Parties to a written contract may not only modify it orally but may rescind it in the same manner, although evidence of rescission of a written contract by a sub-

sequent parol agreement must be clear, positive and above suspicion. (6 R. C. L. par. 306, p. 922.) Where an abandonment or waiver is relied upon, it must be shown to have been the clear intention of the parties to abandon the contract previously entered into. Courts will indulge no presumptions in favor of a waiver of a contract where specific performance is attempted to be enforced, nor will a waiver or abandonment be inferred upon slight proof. A parol waiver or discharge of a written contract must be clear and explicit and be proved beyond a doubt. (*Evans v. Gerry,* 174 Ill. 595.) *The burden of establishing a rescission of the written contract was upon appellees. Rae v. Klotter,* 329 Ill. 59; *Supreme Tent K. O. T. M. v. Stensland,* 206 id. 124.'' (*Selman v. Geary,* 334 Ill. 642, 650. Italics ours. See also *Frankenfield v. Ross,* 328 Ill. 487, 493; *Voris v. McIver,* 339 Ill. 340, 348.) The defendant contends that the instruction was erroneous in that it ''requires the defendant to show that it was the 'mutual intention' of the parties to cancel the contract.'' Obviously there is no merit in this contention.

The defense of abandonment or cancellation was really the only one, upon the merits, made by the defendant. At the request of the defendant the court submitted to the jury the following interrogatory: ''Do you find from the evidence in this case and under the instructions of the court that on or about the 25th or 26th of February, 1925, an agreement was made between plaintiff and defendant to abandon the contract sued upon in this case? If you find in the affirmative you will answer yes, all the jurors signing their names, and if you find in the negative you will answer no, all the jurors signing their names.'' The answer to this interrogatory was, ''No.'' The defendant filed a motion for a new trial, setting up a great many grounds for a new trial, but it made no specific objection to the special finding nor did it file any motion to set aside the special finding. ''It has been held by this court

that the defendant is conclusively bound by a special finding of fact such as is here involved unless error has been assigned thereon and the question has also been raised on the motion for a new trial. (*Avery v. Moore*, 133 Ill. 74; *Pennsylvania Coal Co. v. Kelly*, 156 id. 9; *Empire Laundry Machinery Co. v. Brady*, 164 id. 58; *Voigt v. Anglo-American Provision Co.*, 202 id. 462.) No motion was made by plaintiff in error to set aside this special finding of fact in the trial court nor was any error assigned thereon, either in the Appellate Court or this court. It is, however, contended here that the question was preserved by motion made by plaintiff in error in the trial court requesting that court to direct a verdict for plaintiff in error, and was also preserved in the motion for new trial by the general objection that the verdict was contrary to the weight of the evidence. Under the rulings of this court neither of these points can be sustained. . . . It is also argued by counsel that the general objection in the motion for a new trial that the verdict was contrary to the weight of the evidence was sufficient to question the validity of the special finding. We agree with the argument of counsel for plaintiff in error that a special finding is no more binding upon plaintiff in error than is the general verdict. The plaintiff in error is entitled to raise the correctness of a special finding on motion for a new trial, and may also take an appeal from the ruling of the trial court thereon. (*Illinois Steel Co. v. Mann, supra.*) But the objection to the special finding must be specific, and it is not sufficient to simply raise the question by a general objection that the verdict is contrary to the weight of the evidence.'' (*Brimie v. Belden Mfg. Co.*, 287 Ill. 11.)

The defendant contends that the court erred in giving to the jury plaintiff's instruction number three. This instruction relates to the elements that a jury

might take into consideration in determining · the weight to be given to the testimony of the witnesses. The defendant contends that it omitted the element that bears on the intelligence or lack of intelligence of a witness. If it be conceded that the instruction was lacking in this regard the defect was entirely cured by the defendant's fourth instruction, which informed the jury fully as to the various elements that they might take into consideration in determining the credibility of a witness. The defendant contends that the court erred in giving plaintiff's instruction number four, which was a stock cautionary instruction. There is not the slightest merit in this contention.

The defendant contends that "the trial Judge by his manner of ruling, comments, remarks and demeanor, erroneously and improperly prejudiced the jury against the case of the defendant." It states that "the record does not fully show the attitude of the trial Court." It seems to be the position of the counsel for the defendant that he may permit statements of the trial court to go unchallenged and then on review claim they are prejudicial. He complains that the court made a certain statement in the presence of the jury and the record shows that it was not made in the presence of the jury. Even where the court ruled with the defendant the counsel seeks to argue that the court's manner of ruling prejudiced the defendant, although the able counsel did not seem to entertain that view at the time the court made his rulings. We have carefully examined the record in reference to the contention and we find that the instant complaint is entirely unwarranted. It is quite significant that the able counsel for the defendant made no objection to any of the remarks or comments of the court of which he now complains. In order to base assignments of error upon alleged improper remarks by the court, it must appear from the record that ob-

jections were made at the time. (*Chicago City Ry. Co. v. Carroll,* 206 Ill. 318; *Public Service Co. of Northern Ill. v. Leatherbee,* 311 Ill. 505, 508; *People v. Abrams,* 249 Ill. 619, 621; *People v. McLaughlin,* 337 Ill. 259, 264.) However, we have carefully examined the record and we are satisfied that the defendant had a fair trial.

The defendant contends that "the verdict is against the weight of the evidence." We find no merit in this contention, and, as we have heretofore stated, the only material question of fact that was controverted relates to the alleged abandonment or cancellation of the contract.

The judgment of the superior court of Cook county is a just one and it should be and it is affirmed.

*Affirmed.*

GRIDLEY, P. J., and KERNER, J., concur.